OPINION OF THE COURT
Eugene E. Peckham, S.
Joseph and Mary K. have petitioned under article 17 of the Surrogate’s Court Procedure Act to be appointed guardians of the unborn child of their 17-year-old daughter, Linda (a fictitious name). The baby is viable since Linda is eight months pregnant. The sole purpose for the application is so the baby will be covered under Joseph’s Blue Cross Blue Shield health insurance policy.
The question presented is whether it is permissible for the maternal grandparents to be appointed guardians of the person of the unborn baby in order for him or her to be covered under the grandfather’s health insurance.
A hearing was held in this matter at which Linda and her parents, as well as the 16-year-old putative father and his parents appeared. Linda has filed her written consent to her parents being appointed as temporary guardians of her unborn child. At the hearing, counsel for the putative father and his parents stated they would also consent to the guardianship.
A letter has been submitted to the court from the General Counsel for Blue Cross Blue Shield of Central New York which states: “Blue Cross Blue Shield is willing to enroll Linda K.’s child as an eligible dependent on Mr. K.’s Blue Cross Blue Shield coverage, effective as of the date of his or her birth, provided that the K.’s have at that time been appointed guardians of the person of the child.”
There is no precedent directly on point on the question presented. The closest is Matter of Thomas (118 Misc 2d 456 [Sur Ct, Nassau County 1983]) which granted guardianship to the mother of an unborn child so that she could apply for letters of administration in the estate of the deceased putative father. The court held the baby had a property right in the father’s estate in reliance on the ancient doctrine that a child en ventre sa mere subsequently born alive can inherit from the deceased parent. (EPTL 4-1.1 [c]; 6-5.7.)
The Court of Appeals has held that a child injured in the womb, and subsequently born alive but disabled, has a cause of action for those injuries. (Woods v Lancet, 303 NY 349 [1951].) However, where the child is not born alive letters of administration will not be issued to prosecute a wrongful death *230 claim. (Endresz v Friedberg, 24 NY2d 478 [1969]; Matter of Logan, 3 NY2d 800 [1957].) And in Albala v City of New York (54 NY2d 269 [1981]), the Court of Appeals held that there is no cause of action for a child born with a damaged brain allegedly as the result of malpractice committed against the mother before the child was conceived.
Noteworthy also is Ryan v Beth Israel Hosp. (96 Misc 2d 816 [Sup Ct, NY County 1978]) where a guardian ad litem was appointed a few hours before birth to protect an unborn child, thus confirming it is permissible to appoint a guardian for the unborn (cf. RPAPL 1608). However, when the child was stillborn, the guardian’s complaint for injuries to the child was dismissed since the death of the ward terminated the guardian’s authority. (See also Hatch v Riggs Natl. Bank, 284 F Supp 396 [D DC 1968] [where, it was held, after an exhaustive review of the authorities, that a court has the authority to appoint a guardian ad litem for an unborn child even if there is not explicit statutory authority to do so].)
Thus it is clear under New York law that an unborn child has certain limited rights, contingent upon being born alive. There is a right of inheritance and there is a right to bring an action by the live child for injuries suffered in útero.
Do these limited rights of the unborn extend to being covered by health insurance? Must the child have a property right to be protected for the guardianship to issue as in Matter of Thomas? Counsel for the petitioners argues there is a property right to the insurance in the unborn child, citing Matter of Transit Cas. Co. (79 NY2d 13 [1992]). In that case the plaintiffs building burned after his fire insurance company went into liquidation thus terminating the policy, but plaintiff never received notice of termination. The Court held that the right to notice was a valuable property right deserving of protection and thus plaintiff would be included among the claimants in the liquidation.
But in this case, we are not dealing with the holder of an existing policy asserting rights under the insurance contract, but rather an unborn child who is not a party to the contract. However, the child could be covered under the contract, provided the grandfather is appointed guardian of the person of the child. Counsel argues that the child’s rights flow under the contract, in similar fashion as if the unborn child’s parent held a policy which provided coverage for pregnancy and childbirth. There would be no question of coverage if the mother, Linda, had a policy, but since she is underage and liv *231 ing at home, resort must be had to her father’s policy. In this situation, though, there is an intervening step that must be taken to get to the contract coverage, namely appointment of the grandfather as guardian. Such appointment is not necessary where the parent is the policyholder. It is the grandfather who holds the insurance contract rights and thus a property right in the policy, not the unborn child.
Nevertheless, SCPA 1703 provides that a petition for guardianship may be brought by “any person in behalf of the infant.” SCPA 1702 provides the Surrogate’s Court with jurisdiction over infants to “appoint a guardian of his person or property, or of both.” SCPA 1707 (1) states “the court may appoint a person other than the parent of the infant” as guardian. The Court of Appeals has held that the Surrogate has “wide discretion” in appointing a guardian for an infant and that “the paramount question is whether the interest of the infant will be promoted by the appointment to be made.” (Matter of Stuart, 280 NY 245, 250 [1939]; accord, Matter of La Fountain, 33 AD2d 586 [3d Dept 1969].) It appears that when a court is appointing a guardian a property right in the infant is not essential, but rather the best interests of the infant are primary.
It is clear that the State has a substantial interest in protecting the life and health of an unborn child, particularly where, as here, the child is viable. (Cf. Roe v Wade, 410 US 113 [1972].) Several cases have held that a pregnant woman can be forced to undergo blood transfusions to protect the health of the fetus, despite her religious beliefs to the contrary as a Jehovah’s Witness. (Matter of Jamaica Hosp., 128 Misc 2d 1006 [Sup Ct, NY County 1985]; Raleigh Fitkin-Paul Morgan Mem. Hosp. v Anderson, 42 NJ 421, 201 A2d 537 [1964], cert denied 377 US 985 [1964].) In Jamaica Hosp. the doctor was appointed special guardian of the unborn child to “exercise his discretion to do all that in his medical judgment was necessary to save its life” (id. at 1008). The point being that the court has the authority to take the necessary steps to protect the life and health of an unborn child. It seems obvious that it is in the best interests of Baby K. to be covered by Blue Cross Blue Shield health insurance. Having health insurance will ensure the baby gets proper treatment at birth which will protect the baby’s health and could protect his or her life if complications should develop. See Matter of Rita N. (122 Misc 2d 1 [Fam Ct 1983]), where Family Court dismissed a guardianship petition which was sought in order to acquire insurance coverage for an infant. *232 The Family Court referred the matter to Surrogate’s Court. The implication being that Surrogate’s Court can appoint a guardian for the purpose of providing insurance coverage.
In Matter of La Fountain (supra), the court exercised its discretion to appoint the grandparents as guardians. Since Blue Cross has indicated it will provide medical coverage if the grandparents become guardians, the Court holds that it would be in the best interests of Baby K. to appoint Joseph K. and Mary K. as his or her temporary guardians of the person.
One issue remains, which is the question of the effect of this guardianship upon custody and visitation after the child’s birth. The parties have presented to the Court a custody and visitation stipulation, dated May 10, 2001, and consented that it be incorporated in the guardianship order issued by this Court.
This raises the question of whether Surrogate’s Court ever has jurisdiction to issue a custody order. Ordinarily custody and visitation are Family Court matters. (NY Const, art VI, § 13 [c]; Family Ct Act § 651.) There are two cases where Surrogate’s Court has taken jurisdiction to settle custody matters arising in the context of a guardianship proceeding. (Matter of Jacqueline F., 94 Misc 2d 96, affd 65 AD2d 545, affd 47 NY 215; Matter of White, 118 AD2d 336 [1st Dep 1986].)
We are also mindful of the stricture laid down by Chief Judge Cardozo regarding courts of specialized jurisdiction. In a case involving the Surrogate’s Court he said: “To remit the claimant to another forum after all these advances and retreats, these reconnaissances, and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.” (Matter of Raymond v Davis, 248 NY 67, 72 [1928].)
Accordingly, since this Court has jurisdiction of the parties in the guardianship matter and is familiar with the facts of the case, insofar as this Court has jurisdiction of the custody matter, the custody and visitation stipulation, dated May 10, 2001, is approved and is incorporated in the order granting guardianship. However, any and all future proceedings regarding custody and visitation are hereby referred to the Broome County Family Court for hearing and determination.
The Court commends the prospective parents and grandparents for the interest and cooperation they are showing in trying to provide a stable environment for the new baby with everyone in both families involved in the baby’s upbringing.
*233 An order will issue granting letters of temporary guardianship of the person of Baby K., without bond, to Joseph K. and Mary K. maternal grandparents of Baby K. and incorporating the said custody and visitation stipulation.