[979 NYS2d 643]

In the Matter of MARISOL N.H., Appellant. (Proceeding No. 1.)

In the Matter of SAMUEL D.H., Appellant. (Proceeding No. 2.)

In the Matter of SILVIA J.H., Appellant. (Proceeding No. 3.)

Second Department, February 5, 2014

**APPEARANCES OF COUNSEL**

*Theo Liebmann*, Hempstead, for appellants.

**OPINION OF THE COURT**

CHAMBERS, J.

On this appeal, we conclude that the subject children, facing the possibility of being separated from their only parent and returned to their native country where gang members have threatened their lives, may seek to have their natural mother appointed as their guardian as a first step toward obtaining legal residency in the United States.

The subject children, Samuel D.H., Marisol N.H., and Silvia J.H., ages 19, 18, and 16, respectively, were born in El Salvador to Miriam A.G. (hereinafter the mother) and Leonidas H. (hereinafter the father). According to the allegations made in support of the petitions, the father drank often, and he verbally and physically abused the mother. When Samuel was just four years old, the mother left the father, taking the children with her to her mother's home. The father never again had meaningful contact with the children; he did not provide them with any financial support, give them any birthday or Christmas presents, or show any interest in them.

It is further alleged that in El Salvador, in the small neighborhood where the mother and the subject children settled, now abandoned by their father, they lived under the constant threat of violence from gangs. Members of a certain gang threatened to kill Samuel, as they did with many other children, if he refused to join their ranks, and they tried to extort money from his grandmother in exchange for sparing his life. Samuel knew nine children, one a close friend, who had refused to join that gang and were later killed. One gang member told the mother he would kill her, if she did not have sexual relations with him. The perilous situation led the mother to leave El Salvador for the United States so that she could establish a safe home for the children. She found work and lived with family and friends, saving money so that she could bring the children to her. Meanwhile, though, Samuel had stopped attending school because gang members had continued to threaten to kill him if he did not join them. Fearing for Samuel's life, the mother arranged for him to travel to the United States. Marisol and Silvia stayed behind with their grandmother. Subsequently, while the children's grandmother was walking home from work, she was killed by members of that gang. Three gang members were arrested for the murder, but the threats did not abate; other gang members threatened the lives of all the members of the mother's family. Marisol and Silvia stopped attending school, and would only leave their house if an unrelated adult male accompanied

them. The mother then brought Marisol and Silvia to the United States.

Now, the children live with their mother in Nassau County, along with their teenaged uncle, Javier, who was left orphaned by the death of the children's grandmother. The mother, who is Javier's legal guardian, works 60 hours per week in order to support him and the children.

The children petitioned the Family Court for the appointment of the mother as their guardian so that they could pursue special immigrant juvenile status (hereinafter SIJS) as a means to obtaining lawful residency status in the United States, and be freed from the fear of being returned to El Salvador, where they would have no parent to support and protect them.

At a conference on the matter, the Family Court concluded that a best interests hearing was not warranted, inter alia, because the children had the "mother to protect them." There was "no reason," even if it was just "strictly for immigration purposes," to award the mother guardianship "of her own children." The Family Court issued an order dismissing the petitions without prejudice for failure to state a cause of action. We reverse.

SIJS is a form of immigration relief that affords undocumented children a pathway to lawful permanent residency and citizenship (*see Matter of Marcelina M.-G. v Israel S.*, 112 AD3d 100, 106-107 [2013]; *E.C.D. v P.D.R.D.*, 114 So 3d 33, 35 [Ala Ct Civ App 2012]; Angie Junck, *Special Immigrant Juvenile Status: Relief for Neglected, Abused, and Abandoned Undocumented Children,* 63 Juv & Fam Ct J 48 [winter 2012]). The Immigration and Nationality Act, which established SIJS (*see* 8 USC § 1101 [a] [27] [J], added by Pub L 101-649, § 153, 104 US Stat 4978 [101st Cong, 2d Sess, Nov 29, 1990]), employs "a unique hybrid procedure that directs the collaboration of state and federal systems" (*Matter of Hei Ting C.*, 109 AD3d 100, 104 [2013]). The child, or someone acting on his or her behalf, must first petition a state juvenile court to issue an order making special findings of fact that the child is dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court. Further, a state juvenile court must find that reunification with one or both parents is not viable due to parental abuse, neglect, abandonment, or a similar basis, and that it is not in the child's best interests to be returned to his or her home country (*see* 8 USC § 1101 [a] [27] [J] [iii]; 8 CFR 204.11 [c]; *Matter of Marcelina M.-G. v Israel S.*, 112 AD3d at 107). Only once a state juvenile court has issued this factual

predicate order may the child, or someone acting on his or her behalf, petition the United States Citizenship and Immigration Services (hereinafter USCIS) for SIJS (*see* 8 CFR 204.11 [d]; *Matter of Hei Ting C.*, 109 AD3d at 104). In addition, to be eligible for SIJS, the child must be unmarried and under 21 years of age (*see* 8 CFR 204.11 [c] [1], [2]). Ultimately, the Secretary of the Department of Homeland Security must consent to the grant of SIJS (*see* 8 USC § 1101 [a] [27] [J] [iii]; *Matter of Marcelina M.-G. v Israel S.*, 112 AD3d at 114). The Secretary's consent ensures that the child is seeking SIJS for the purpose of obtaining relief from abuse, neglect, or abandonment, and not primarily for the purpose of obtaining lawful permanent residency status (*see* Mem of Donald Neufeld, USCIS Acting Associate Director, Domestic Operations, to Field Leadership, *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions* at 3 [Mar. 24, 2009], quoting HR Rep 105-405, 105th Cong, 1st Sess at 130, reprinted in 1997 US Code Cong & Admin News at 2941, 2981). Since ultimately the Secretary must give consent, the Family Court "is not rendering an immigration determination" (*Matter of Marcelina M.-G. v Israel S.*, 112 AD3d at 109; *see Matter of Hei Ting C.*, 109 AD3d at 104).

In this instance, in order to satisfy the requirement that the subject children be legally committed to an individual appointed by a state or juvenile court, they are requesting that their natural mother be appointed as their guardian. We begin our analysis by considering the threshold issue of whether the Family Court has the statutory authority to appoint a natural parent to be the guardian of his or her children. Family Court Act § 661 provides that "the provisions of the surrogate's court procedure act shall apply to the extent they are applicable to guardianship of the person of a minor or infant and do not conflict with the specific provisions of this act" (Family Ct Act § 661 [a]). Under the Surrogate's Court Procedure Act, "any person" (SCPA 1703) may petition to be named as guardian of an infant, and a guardian is "[a]ny person to whom letters of guardianship have been issued by a court of this state, pursuant to this act, the family court act or article 81 of the mental hygiene law" (SCPA 103 [24]).* Since these statutes are without

---

* An infant now includes a person less than 21 years of age who consents to the appointment of a guardian (*see* Family Ct Act § 661 [a]). In 2008, the legislature amended Family Court Act § 661 (a) in response to the federal law permitting persons under the age of 21 to seek SIJS (*see Matter of Sing W.C. [Sing Y.C.—Wai M.C.]*, 83 AD3d 84, 87 [2011]).

limitation, they must include even the appointment of a natural parent as guardian.

Indeed, it is well established that in a contest for guardianship between a natural parent and a relative or nonrelative of the child, the natural parent may be named as the guardian or coguardian of the child. For example, in *Matter of Revis v Marzan* (100 AD3d 1004 [2012]), in a proceeding where the maternal aunt and maternal uncle were seeking guardianship of their niece, this Court affirmed an order awarding custody of the child to her natural mother. In *Matter of Justina S.* (180 AD2d 641 [1992]), over the natural father's objection, the natural mother and her new husband were awarded coguardianship of her natural child.

The only distinction between those cases and the present case is that there is no contest for guardianship of the children. No one is opposing the appointment of the mother as guardian of the children. This distinction, however, does not make a difference. Unopposed petitions for custody brought by a natural parent have been granted (*see Matter of Maria P.E.A. v Sergio A.G.G.*, 111 AD3d 619 [2013] [Family Court granted mother's unopposed petition for custody of her own child]). There is no basis for treating an unopposed guardianship petition more restrictively than an unopposed custody petition (*see Matter of Karen C.*, 111 AD3d 622 [2013]). The distinctions between guardianship and custody are elusive, as both forms of legal responsibility to a child have very similar attributes (*see* Merril Sobie, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 661, 2014 Pocket Part at 97-98). Yet, at least for Samuel, since he is over 18, he cannot be subjected to a custody order (*see e.g. Matter of Julian B. v Williams*, 97 AD3d 670 [2012]). Accordingly, we conclude that the Family Court has the statutory authority to grant a natural parent's petition for guardianship of his or her child, regardless of whether the petition is opposed.

Further, the Family Court erred in refusing to conduct a hearing to determine whether granting the guardianship petition would be in the best interests of the children. "When considering guardianship appointments, the infant's best interests are paramount" (*Matter of Denys O.H. v Vilma A.G.*, 108 AD3d 711, 712 [2013]). The Family Court's comments indicate that it found it unnecessary to hold a hearing because the children's mother was available to protect them. However, as we explained in *Matter of Marcelina M.-G. v Israel S.* (112 AD3d at 111), the fact

that a child has one fit parent available to care for him or her "does not, by itself, preclude the issuance of special findings under the SIJS statute." Rather, a child may be eligible for SIJS findings "where reunification with just one parent is not viable as a result of abuse, neglect, abandonment, or a similar state law basis" (*id.* at 110). Moreover, in determining whether it is in the best interests of a child to grant a guardianship petition, it is entirely consistent with the legislative aim of the SIJS statute to consider the plight the child would face if returned to his or her native country and placed in the care of a parent who had previously abused, neglected, or abandoned him or her.

In the case before us, there are sufficient allegations in the guardianship petitions and supporting papers to suggest that naming the mother as guardian of the subject children would be in their best interests (*see Matter of Deven Meza F. [Maria F.—Oneyda M.],* 108 AD3d 701 [2013]; *see also Matter of Baby K.,* 188 Misc 2d 228 [2001] [grandparents were awarded temporary guardianship of their daughter's unborn baby, with both parents' consent, so that the child would be covered under the grandfather's health insurance policy]). The father has abandoned the children (*see Matter of Marcelina M.-G. v Israel S.,* 112 AD3d at 110, 114). If the children are returned to their native country, they may be separated from their only other parent, who first left El Salvador because she was threatened with sexual assault and wanted to earn enough money to bring the children to the United States. The children will not have the protection of their grandmother who became their temporary, de facto guardian in El Salvador once the mother immigrated to the United States, as members of a gang murdered her. Alone, without either parent or their maternal grandmother, the children would face the prospect of having to protect themselves from violent gang members, which, cruelly, may be possible only by joining them (*see Yeboah v United States Dept. of Justice,* 345 F3d 216, 221 [3d Cir 2003] [noting that SIJS is designed to prevent a child from being deported to a parent who has abandoned him or her]). Naming the mother as guardian of the children may potentially enable the children to pursue legal status in the United States. If legal status is granted, the children may avoid being separated from their mother and instead keep their family intact and safe, away from the perils present in El Salvador (*see Matter of Maria P.E.A. v Sergio A.G.G.,* 111 AD3d at 620-621). In sum, assuming the truth of the allegations, we disagree with the Family Court's conclusion that there

is "no reason" to appoint the mother as guardian of the children.

Therefore, the order is reversed, on the law, the guardianship petitions are reinstated, and the matters are remitted to the Family Court, Nassau County, for a hearing and a new determination of the guardianship petitions thereafter (*see Matter of Francisco M.-G. v Marcelina M.-G.*, 100 AD3d 900, 901 [2012]; *Matter of Ashley W. [Verdele F.]*, 85 AD3d 807, 809 [2011]).

MASTRO, J.P., RIVERA and LEVENTHAL, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, the guardianship petitions are reinstated, and the matters are remitted to the Family Court, Nassau County, for a hearing and new determination of the guardianship petitions thereafter.