FILED
11/29/2017
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 1, 2017

## IN RE DANELY C.

**Appeal from the Chancery Court for Rutherford County**
**No. 16CV-1115      Howard W. Wilson, Chancellor**

___

**No. M2016-02054-COA-R3-JV**

___

M.V.C.[1], the mother of Danely C., an undocumented minor born in Honduras, filed a petition in the trial court seeking an order appointing M.V.C. as guardian of her daughter. She further asked the court to make findings as mandated by 8 U.S.C.A. § 1101(a)(27)(J) (2014). Findings favorable to the petitioner are a prerequisite for Danely C. to apply under federal law for special immigrant juvenile status. The petitioner prayed "[t]hat sevice of process issue as necessary upon [Danely C]." The trial court, acting *sua sponte*, dismissed the petition, finding "no justiciable controversy in this cause." We vacate the judgment of the trial court and remand for a hearing with respect to the matters contemplated by 8 U.S.C.A. § 1101(a)(27)(J).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Allison Wannamaker, Memphis, Tennessee, for the appellant, M.V.C.

The petition was not opposed in the trial court nor on this appeal. The case was submitted to the Court of Appeals on the appellant's brief only.

___

[1] The petitioner has a hyphenated last name. For ease of reference, we will refer to her as "M.V.C." No offense is intended.

1

# OPINION

## I.

M.V.C. (Mother) filed her petition on July 25, 2016, stating that Danely C. was born on October 6, 2000, in Choluteca, Honduras. The petition further alleges, in pertinent part, as follows:

> The Minor lived with the [Mother] in Honduras from 2000 until 2004. In 2004, the living conditions in Choluteca, Honduras were deplorable and dangerous. In order to support the Minor and provide her with a better future, the [Mother] made the difficult decision to leave the Minor with the [Mother]'s mother (now age 70) and grandmother (now age 91), while the [Mother] sought to support herself in the United States. This arrangement was difficult and grew worse as the [Mother]'s mother and grandmother aged. The Minor left to join her mother in the United States because her grandmother and great-grandmother had grown too old and ill to care for the Minor, and were unable to protect her from the dangerous conditions in Honduras.

> The Minor's father, [M.A.R.], is believed to live in Honduras but his exact location is unknown. The Father has never taken any responsibility for the Minor, and they have no emotional attachment to each other. He has not provided financial or other material support for the Minor.

> The Minor last saw her father in Honduras on or about March 12, 2014, as she was preparing to join her mother in the United States. Prior to this occasion, the Minor had last seen the Father approximately eight months earlier (in late 2013). The Minor and the Father occasionally saw each other around the town of Choluteca; the Father might give the Minor money to buy candy but no meaningful financial support.

> On or about March 26, 2014, the Minor was apprehended by U.S. Customs and Border Protection ("CBP") after crossing the U.S.-Mexico border at Hidalgo, TX at age 13. CBP placed her in the custody of the Department of Health and Human Services Office of Refugee Resettlement. On April

2

11, 2014, ORR placed the Minor with the [Mother]. The Minor has resided in Rutherford County since that time, and this fall she will enroll in the 10th grade at Smyrna High School. The Minor is currently in removal proceedings before the Memphis Immigration Court; her next hearing is scheduled for November 29, 2016.

(Numbering in original omitted, as are the citations to exhibits attached to the petition.) Mother further requested that the trial court make findings of fact required by federal immigration law as a prerequisite to Danely's application for special immigrant juvenile status. She alleges as follows:

The Minor will be applying for Special Immigrant Juvenile Status if this Court grants the guardianship. Therefore, [Mother] requests the following specific findings be made by the Court and included in the Court's order of Appointment:

a) That the Minor has been legally placed with a private person by this Court, which is a valid exercise of this Court's jurisdiction under Tenn. Code Ann. § 34-2-101(a).

b) That the Court has declared that reunification with the Minor's father is not possible due to abandonment, as abandonment is defined in Tenn. Code Ann. § 36-1-102.

c) That the court has declared that it is not in the best interest of the Minor to be returned to her home country of Honduras.

The trial court denied Mother's request that "appointment of a Guardian Ad Litem be waived per Tenn. Code Ann. § 34-1-107(a)(2)(A)." Accordingly, the court appointed a GAL the day after the petition was filed. A hearing was scheduled for September 6, 2016. On that day, the trial court, acting *sua sponte*, entered the following order of dismissal, as quoted in its entirety:

This Cause came to be heard on September 6, 2016, before the Honorable Howard W. Wilson, Chancellor, upon the Petition for Appointment of Guardian filed in this matter. At the call of the docket counsel for [Mother] did not appear, but did, however, communicate with the Guardian *ad litem* in an effort to request the Court to waive her appearance in light of

3

the issues necessitating counsels' agreed request for a continuance.

After a review of the Record, it appears that the Petitioner . . . is the natural mother of the minor child at issue in this guardianship proceeding. However, pursuant to Tenn. Code Ann. § 34-1-102, parents are the natural guardians of their minor children. Therefore, the mother's Petition fails to state a claim for which relief can be granted due to the fact that she already serves as the guardian of her daughter by operation of law. Accordingly, there is no justiciable controversy in this cause, and the same is hereby DISMISSED with prejudice. Court costs in this matter as well as the fees of the Guardian *ad litem* shall be taxed to [Mother]. The Guardian *ad litem* is instructed to submit an affidavit of fees along with a proposed order of approval for the Court's consideration.

(Capitalization and italics in original). Mother timely filed a notice of appeal.

## II.

The issue presented is whether the trial court erred in dismissing Mother's petition for failure to state a claim upon which relief can be granted. In our review, we accept as true all factual allegations of the petition, and review de novo the trial court's legal conclusion regarding the adequacy of the petition. *Moore-Pennoyer v. State*, 515 S.W.3d 271, 275-76 (Tenn. 2017) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).

## III.

The federal statute at the heart of this case is 8 U.S.C.A. § 1101(a)(27)(J), which has been described as establishing "a unique hybrid procedure that directs the collaboration of state and federal systems." *In re Marisol N.H.*, 115 A.D.3d 185, 188 (N.Y. App. Div. 2014) (internal quotation marks omitted). It provides, in pertinent part, as follows:

(27) The term "special immigrant" means –

\*      \*      \*

(J) an immigrant who is present in the United States –

4

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that –

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

This Court recently examined this statute in the context of addressing whether, and to what extent, Tennessee courts have jurisdiction to make findings in proceedings involving a child's effort to obtain special immigrant juvenile status. *In re Domingo C.L.*, No. M2016-02383-COA-R3-JV, 2017 WL 3769419, at *1 (Tenn. Ct. App., filed Aug. 30, 2017). Our discussion in *Domingo C.L.* is helpful to provide a background and overview of the legal issues and procedure involved here, so we quote it at some length as follows:

Special Immigrant Juvenile ("SIJ") status was created by the United States Congress to provide undocumented children

5

who lack immigration status with a defense against deportation proceedings[:]

> Some children present in the United States without legal immigration status may be in need of humanitarian protection because they have been abused, abandoned, or neglected by a parent. Special Immigrant Juvenile (SIJ) status is an immigration classification that may allow for these vulnerable children to immediately apply for lawful permanent resident status ("LPR" status or a "Green Card").

"Special Immigrant Juvenile Status: Information for Juvenile Courts," U.S. Citizen and Immigration Services ("USCIS"), (hereinafter "Info. for Juvenile Courts") available at http://perma.cc/W5W3-MGGC (last visited March 9, 2015); *see also* **Perez–Olano v. Gonzalez**, 248 F.R.D. 248, 252 (2008) (noting that SIJ provisions create a method for abused, neglected, and abandoned children to become lawful permanent residents). *Children eligible for SIJ status may be in the United States with only one parent*, or they may have fled to the United States without either parent.

Obtaining SIJ status requires a specific finding from a state juvenile court. Thus, "[t]he [Immigration and Nationality Act of 1990] creates a special circumstance where a State juvenile court is charged with addressing an issue relevant only to federal immigration law." **Simbaina v. Bunay**, 221 Md. App. 440, 449, 109 A.3d 191 (2015) (internal citations omitted)[:]

> [State] juvenile courts issue orders that help determine a child's eligibility for SIJ status. A child cannot apply to USCIS for SIJ status without an order from a juvenile court. However, juvenile judges should note that providing an order does not grant SIJ status or a "Green Card" – only [the U.S. Customs and Immigration Services] can grant or deny these benefits. The role of the court is to make factual findings based on state law about the

6

abuse, neglect or abandonment; family reunification; and best interest of the child.
[The source for this is shown as] Info. for Juvenile Courts.

The process for applying for SIJ status consists of several steps. First, there must be a filing in state court, which is often in the form of a guardianship or custody complaint, *see Simbaina*, 221 Md. App. at 453-54, 109 A.3d 191, but which can also come through filings in orphans, probate, and delinquency courts, among others. Info. for Juvenile Courts. In conjunction with the state court proceedings there must be a request for specific findings. These findings can be requested at the same time as the initial guardianship or custody complaint, or, as in Dany's case, the motion for findings can come separately, after the guardianship or custody has been granted.

Once the state court has made the specific findings (which we will explain in detail below), application is made to USCIS for SIJ status. If SIJ status is granted by USCIS, there is a third step of applying to adjust status to Legal Permanent Resident (green card application). As the last two steps are solely under the jurisdiction of USCIS, our analysis focuses on the first step, the filing in the state court and the related request for specific findings.

\*     \*     \*

The state juvenile court referenced in 8 U.S.C. § 1101(a)(27)(J) is defined in 8 C.F.R. § 204.11(a) as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." Which courts qualify as "juvenile courts" varies from state to state. *Simbaina*, 221 Md. App. at 453, 109 A.3d 191.

The *state juvenile court must make specific findings of fact regarding the child's eligibility for SIJ status*. While the state juvenile cases often arise through guardianship or custody proceedings, "[t]he federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual

7

findings should be made." *Id*. at 455, 109 A.3d 191. It is important to remember that the juvenile court is not granting SIJ status. Info. for Juvenile Courts. Rather, the juvenile court is making factual findings that the child meets certain eligibility requirements. *Id*. The required findings are:

> (1) The juvenile is under the age of 21 and is unmarried; 8 C.F.R. § 204.11(c)(1)–(2);
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court; 8 C.F.R. § 204.11(c)(3);
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles; 8 U.S.C.A. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(a), (c) [amended by the Trafficking Victims Protection Reauthorization Act ("TVPRA") 2008];
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008]; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008].

8 C.F.R. § 204.11(a), (c) & (d); 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008].

These findings of fact by the state juvenile court are issued in a "predicate order." The predicate order must be included with the application for SIJ status submitted to USCIS. *Marcelina M.–G. v. Israel S.*, 112 A.D.3d 100, 973 N.Y.S.2d

714, 719 (2013).  Without a predicate order, the child cannot apply for SIJ status.  *If the underlying juvenile court filing is properly before the court, state courts are required to make these factual findings*.  *Simbaina*, 221 Md. App. at 455–56, 109 A.3d 191.  Also, trial courts should bear in mind that Congress established the requirements for SIJ status knowing that those seeking the status would have limited abilities to corroborate testimony with additional evidence.  *See, e.g.*, 8 U.S.C.A. § 1232(8).  The purpose of the law is to permit abused, neglected, or abandoned children to remain in this country.  *In re Y.M.*, 207 Cal. App. 4th 892, 910, 144 Cal. Rptr. 3d 54 (2012).  Imposing insurmountable evidentiary burdens of production or persuasion is therefore inconsistent with the intent of the Congress.  *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), H.R. Res. 7311, 110th Cong. (2008) (enacted).

Because of the statutory requirements, it is imperative that the predicate order be worded very precisely and contain all necessary language.  "Template orders are usually not sufficient" and while the predicate order does not have to recount every detail of the case, the federal government requires that it "must show the factual basis for the court's findings."  Info. for Juvenile Courts.

\*     \*     \*

We hold that the trial court must apply the state law definitions of "abuse," "neglect," "abandonment," "similar basis under state law," and "best interest of the child" . . . without taking into account where the child lived at the time the abuse, neglect, or abandonment occurred.

*Domingo C.L.*, 2017 WL 3769419, at \*2-\*5, quoting and adopting *In re Dany G.*, 117 A.3d 650, 654-57 (Md. Ct. Spec. App. 2015) (emphasis added; brackets in original).  We concluded in *Domingo C.L.*:

the Trial Court had jurisdiction to hear the Petition for Appointment of Guardian pursuant to Tenn. Code Ann. § 34–2–101 (2015).  As the [Rutherford County Chancery] Court had jurisdiction under Tennessee law to make a determination

9

as to the Minor's custody, it qualifies as a "juvenile court" referenced in 8 U.S.C.A. § 1101(a)(27)(J). Furthermore, pursuant to Tenn. Code Ann. § 34–2–105:

> If the court determines a guardian is needed, the court shall enter an order which shall:
>
>    &ast;   &ast;   &ast;
>
> (3) State any other authority or direction as the court determines is appropriate to properly care for the person and property of the minor.

> Tenn. Code Ann. § 34–2–105 (2015).

*Id.* at \*7.

Tennessee's guardianship statutes expressly contemplate that one parent may be appointed as guardian of his or her child. Tenn. Code Ann. § 34-2-103 (2015) provides as follows:

> Subject to the court's determination of what is in the best interests of the minor, the court shall consider the following persons in the order listed for appointment of the guardian:
>
> (1) *The parent or parents of the minor*;
>
> (2) The person or persons designated by the parent or parents in a will or other written document;
>
> (3) Adult siblings of the minor;
>
> (4) Closest relative or relatives of the minor; and
>
> (5) Other person or persons.

(Emphasis added.) Thus, there is clearly no statutory bar to Mother's request for guardianship of Danely. As it currently stands, both Mother and Father are "joint natural guardians" of their daughter, as provided by Tenn. Code Ann. § 34-1-102:

10

(a) Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support and also with the care, management and expenditure of their estates. Each parent has equal powers, rights and duties with respect to the custody of each of their minor children and the control of the services and earnings of each minor child; . . .

\* \* \*

(c) If either parent dies or is incapable of acting, the guardianship of each minor child shall devolve upon the other parent.

The primary inquiry for a court making a guardianship decision is expressly provided at Tenn. Code Ann. § 34-2-103 as "what is in the best interests of the minor." Mother has alleged on behalf of Danely that it is not in her best interest to be returned to Honduras to a father who is alleged to have abandoned her. The Appellate Division of the Supreme Court of New York addressed the same question as presented here in *In re Marisol N.H.*, stating as follows in pertinent part:

The children petitioned the Family Court for the appointment of the mother as their guardian so that they could pursue special immigrant juvenile status (hereinafter SIJS) as a means to obtaining lawful residency status in the United States, and be freed from the fear of being returned to El Salvador, where they would have no parent to support and protect them.

. . . the Family Court concluded that a best interests hearing was not warranted, inter alia, because the children had the "mother to protect them." There was "no reason," even if it was just "strictly for immigration purposes," to award the mother guardianship "of her own children." The Family Court issued an order dismissing the petitions without prejudice for failure to state a cause of action. We reverse.

\* \* \*

In this instance, in order to satisfy the requirement that the subject children be legally committed to an individual

11

appointed by a state or juvenile court, they are requesting that their natural mother be appointed as their guardian.

*　　*　　*

> . . . the Family Court erred in refusing to conduct a hearing to determine whether granting the guardianship petition would be in the best interests of the children. When considering guardianship appointments, the infant's best interests are paramount. The Family Court's comments indicate that it found it unnecessary to hold a hearing because the children's mother was available to protect them. However, as we explained in *Matter of Marcelina M.-G. v Israel S.* [112 A.D.3d 100, 111 (N.Y. App. Div. 2013)], the fact that a child has one fit parent available to care for him or her "does not, by itself, preclude the issuance of special findings under the SIJS statute." Rather, a child may be eligible for SIJS findings "where reunification with just one parent is not viable as a result of abuse, neglect, abandonment, or a similar state law basis" (*id.* at 110, [973 N.Y.S.2d 714]). Moreover, *in determining whether it is in the best interests of a child to grant a guardianship petition, it is entirely consistent with the legislative aim of the SIJS statute to consider the plight the child would face if returned to his or her native country and placed in the care of a parent who had previously abused, neglected, or abandoned him or her*.

*In re Marisol N.H.*, 115 A.D.3d at 188, 189, 190-91 (emphasis added; internal quotation marks and citation omitted).

State appellate courts reviewing a juvenile court's decision regarding the issuance of a predicate order under 8 U.S.C.A. § 1101(a)(27)(J) have generally emphasized two points. The first is that "the determination of whether a child should be classified as a special immigrant juvenile rests squarely with the federal government." *H.S.P. v. J.K.*, 121 A.3d 849, 858 (N.J. 2015); *see also* *Recinos v. Escobar*, 46 N.E.3d 60, 65 (Mass. 2016) (observing that "[i]mmigration is exclusively a [f]ederal power," and "[i]t is not the juvenile court's role to engage in an immigration analysis or decision"); *In re Estate of Nina L. ex rel. Howerton*, 41 N.E.3d 930, 937 (Ill. App. Ct. 2015) ("Ultimately, immigration decisions are the purview of the federal government, not the state government") (quoting *Eddie E. v. Superior Court*, 234 Cal. App. 4th 319, 332 (2015)); *Simbaina*, 109 A.3d at 198 ("The federal government 'has exclusive jurisdiction with

respect to immigration [but] state juvenile courts play an important and indispensable role in the SIJ application process' " (brackets in original; quoting *Leslie H. v. Superior Court*, 224 Cal. App. 4th 340, 168 Cal. Rptr. 3d 729, 735 (2014)). As this Court stated in *Domingo C.L.*, "juvenile judges should note that providing an order does not grant SIJ status or a 'Green Card' – only [the U.S. Customs and Immigration Services] can grant or deny these benefits." 2017 WL 3769419, at *3 (brackets in original). After a state court has taken the first step of entering a predicate order, "the last two steps are solely under the jurisdiction of USCIS." *Id.*

Secondly, appellate courts have made it clear that it is not the role of a state juvenile court to consider the purpose or motivation of the minor applicant or a parent, matters of immigration policy, or whether the minor is a "worthy candidate" for SIJ status. As the Supreme Judicial Court of Massachusetts recently stated,

> a person's immigration status remains a matter governed solely by Federal law. Thus, whether a child qualifies for SIJ status and whether to grant or deny an immigrant child's application for SIJ status is beyond the jurisdiction of the Probate and Family Court. The State court's role is solely to make the special findings of fact necessary to the USCIS's legal determination of the immigrant child's entitlement to SIJ status.
>
> *        *        *
>
> Acting within the limits of this fact-finding role, the judge must make the special findings even if he or she suspects that the immigrant child seeks SIJ status for a reason other than relief from neglect, abuse, or abandonment. The immigrant child's motivation for seeking the special findings, if relevant to the child's entitlement to SIJ status, ultimately will be considered by USCIS in its review of the application. The immigrant child's motivation is irrelevant to the judge's special findings.

*Guardianship of Penate*, 76 N.E.3d 960, 966 (Mass. 2017); *see also* *H.S.P.*, 121 A.3d at 860 ("state courts are not charged with undertaking a determination of whether an immigrant's purpose in applying for SIJ status matches with Congress's intent in creating that avenue of relief"); *In re Israel O.*, 233 Cal. App. 4th 279, 289 (2015); *In re Mario S.*, 954 N.Y.S.2d 843, 852-53 (N.Y. Fam. Ct. 2012). In this vein, the Illinois Appellate Court has observed:

13

One theme that runs through several decisions is the state court's reluctance to make the requested findings based on policy concerns. For example, in ***Leslie H. v. Superior Court***, 224 Cal. App. 4th 340, 168 Cal. Rptr. 3d 729 (2014), an immigrant minor was adjudicated delinquent of assault and burglary after she and two friends attempted to steal items from a liquor store. After her guilty plea, the minor was declared a ward of the court and committed to a juvenile detention facility. She then applied to the court for the necessary SIJ predicate findings. After a hearing at which evidence of the minor's abuse and abandonment by her biological parents was presented, the court declined to make the findings. The trial court concluded that Congress could not have intended to confer immigration benefits on juveniles adjudicated delinquent of criminal offenses. . . . Reversing, the California Court of Appeal concluded that the trial court had misapprehended its role in making the SIJ predicate findings:

> A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." ***Id***. at 737.

*See also **Mario S**.*, 954 N.Y.S.2d at 852-53 ("The juvenile court need not determine . . . what the motivation of the juvenile in making application for the required findings might be; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety; and whether the USCIS . . . may or may not grant a particular application for adjustment of status as a SIJ.").

Similarly, a court asked to make SIJ predicate findings need not discern a parent's motivation in abandoning the child.

***In re Estate of Nina L.***, 41 N.E.3d at 935-36 (internal citations omitted).

Although state courts do not make immigration decisions, it is inescapable that a minor seeking SIJ status is dependent upon a juvenile court making the prerequisite findings in a predicate order for the minor to qualify to apply for such status under the scheme established by federal immigration law. *E.C.D. v. P.D.R.D.*, 114 So.3d 33, 36 (Ala. Civ. App. 2012) ("A juvenile court's failure to include the findings relevant to SIJ status 'effectively terminates the application for legal permanent residence, clearly affecting a substantial right' of the child.") (quoting *In re Interest of Luis G.*, 764 N.W.2d 648, 654 (Neb. Ct. App. 2009)); *In re J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. Ct. App. 2012) ("Our review of the juvenile court's decision is impaired by the lack of findings, and the child's immigration status hangs in the balance."); *In re Domingo C.L.* 2017 WL 3769419, at *2. Consequently, we disagree with the trial court's judgment that "there is no justiciable controversy in the cause." As fully discussed above, there is no statutory bar to declaring Mother the legal guardian of Danely, nor is such a judgment precluded by considerations of logic or equity.

On remand, following a hearing at which Mother and Danely shall be allowed to present evidence pertinent to the following issues, the trial court is directed to enter a predicate order adjudicating:

> (1) whether Danely is under the age of 21 and unmarried;
>
> (2) whether the court has legally committed to, or placed Danely under the custody of Mother, as her appointed guardian. This determination shall be made with the primary consideration of the best interest of the child, as provided by Tenn. Code Ann. § 34-2-103;
>
> (3) whether reunification with Father is not viable due to abuse, neglect, abandonment, or a similar basis found under Tennessee law; and
>
> (4) whether it would not be in Danely's best interest to be returned to Honduras.

## IV.

The judgment of the trial court is vacated and the case remanded to the trial court for further proceedings consistent with this opinion. There being no appellee in this

15

action, costs of appeal are assessed to the appellant, M.V.C.

                                          _____

                                          CHARLES D. SUSANO, JR., JUDGE