FILED

Nov 01 2019, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of: Irma Elisabeth Avila Luis, Ramiro Velasquez Avila, *Appellant-Petitioner* | November 1, 2019 |
| | Court of Appeals Case No. 19A-GU-1276 |
| | Appeal from the Jackson Circuit Court |
| | The Honorable Richard W. Poynter, Judge |
| | Trial Court Cause No. 36C01-1803-GU-9 |

**Baker, Judge.**

[1] Irma Elisabeth Avila Luis ("Irma") used to live with her mother in Guatemala. Irma's mother did not have enough money to feed or provide healthcare for her daughter. When Irma was sixteen, Irma's mother put her on a bus, alone, to travel to the United States. Eventually, Irma was placed in the care of her brother, Ramiro Velasquez Avila ("Avila"), who lives in Seymour, Indiana. He filed a petition to become her guardian, which the trial court granted, but it refused to make required findings as to her immigration status.

[2] This case has been here before, after Avila appealed the first order. This Court ordered the trial court to make the required findings. Now, the case is here again, after the trial court refused to abide by this Court's instructions in the first appeal. We now reverse in part and remand with instructions that the trial court enter an order, instanter, bearing the language contained at the end of this opinion.

## Facts

[3] The underlying facts were summarized by this Court as follows:

> Irma, born on May 20, 2000, in Chisec, Guatemala, is a native and citizen of Guatemala. Irma's father, Hilario Velasquez de la Cruz, died when she was three years old. Until 2016, Irma lived with her mother, Julia Avila Luis (Mother), in Guatemala. In 2016, Mother became unable to provide care for Irma. She no longer could afford to feed Irma, send her to school, and provide her with medical care. Mother put Irma on a bus to the United States.

After several weeks of travelling alone to the Mexican-American border, Irma entered the United States and was detained by immigration officials and taken into federal custody. Eventually, the federal government released Irma into the custody of her brother, Avila, who resides in Seymour, Indiana. Since her release from federal custody, Irma has lived with her brother in Indiana. She is studying English and attending Seymour High School in the tenth grade. Avila meets Irma's basic needs and supports her financially and emotionally.

On March 2, 2018, Avila petitioned the trial court to appoint him as guardian of his sister and requested the trial court to make certain findings necessary for Irma to seek classification as a special immigrant juvenile before the United States Citizenship and Immigration Services (USCIS) in accordance with 8 U.S.C. § 1101(a)(27)(J). On May 11, 2018, the trial court conducted a hearing on Avila's petition. During the hearing, the trial court felt "very uncomfortable making those kinds of findings." (Transcript p. 17). The court stated that it had "a real problem" because the federal government "[t]hrowing it on me to make factual findings for them [is] irritat[ing]." (Tr. p. 20). "It should be made by [f]ederal officials. They're the one that makes the decision of who comes in the United States, who leave the United States, not me. And that's why I have a problem with this . . . . Immigration [j]udges are [i]mmigration [j]udges for a reason. That's their decision." (Tr. pp. 21-22). On May 17, 2018, the trial court issued its findings of facts and Order, appointing Avila as guardian of Irma . . . .

*In re Guardianship of Luis*, 114 N.E.3d 855, 856-57 (Ind. Ct. App. 2018). The trial court entered findings, but it did not make the requested findings as to whether Irma qualified for Special Immigrant Juvenile (SIJ) status. Avila appealed.

[4]     This Court explained the underpinnings of the requirement that SIJ findings be made:

> Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for "special immigrant juvenile" (SIJ) status. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. "Congress created the SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent citizens." *In the Interest of J.J.X.C., a Child*, 318 Ga. App. 420, 424, 734 S.E.2d 120 (Ga. Ct. App. 2012).

> To be eligible to petition the federal government for SIJ status, the resident alien must be under the age of 21 and unmarried. 8 C.F.R. § 204.11(c). The child must have been declared dependent upon a state juvenile court "or whom the court . . . has legally . . . placed under the custody of . . . an individual[.]" 8 U.S.C. § 1101(a)(27)(J). In addition, the juvenile court must make two additional findings: (1) "reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i), (ii). The language of the first finding is designed to "prevent youths from using this remedy for the purpose of obtaining legal permanent resident status, rather than for the purpose of obtaining relief from abuse or neglect." *In re Erick M.*, 284 Neb. 340, 820 N.W.2d 639, 645 (2012). Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. 8 U.S.C. § 1101(a)(27(J)(iii).

> Accordingly, the process for obtaining SIJ status is "'a unique hybrid procedure that directs the collaboration of state and

federal systems.'" *In re Marisol N.H.*, 115 A.D. 3d 185, 188, 979 N.Y.S.2d 643 (N.Y. App. Div. 2014). In this hybrid proceeding, the state juvenile court is charged with making the factual inquiry relevant to SIJ status when an unmarried, resident alien child is found to be dependent on the court. "The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *In re J.J.X.C.*, 318 Ga. App. at 425, 734 S.E.2d 120. Therefore, courts in other states have held that a juvenile court errs by failing to consider a request for SIJ findings. "By making these preliminary factual findings, the juvenile court is not rendering an immigration determination." *H.S.P. v. J.K.*, 223 N.J. 196, 121 A.3d 849, 858 (2015). The predicate order issued by a state court is merely a prerequisite that must be fulfilled before a juvenile can submit his or her application for SIJ status to USCIS in the form of an I-360 petition. *Id.* If USCIS approves the juvenile's I-360, he or she will be granted SIJ status. *Id.*

Thus, a state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country.

*Id.* at 857-58 (some internal citations omitted). We reversed in part, emphasizing that "a minor seeking SIJ status is dependent upon a state court to make the prerequisite findings in a predicate order for the minor to qualify for such status under the scheme established by federal immigration law." *Id.* at 859. We remanded with instructions that the trial court consider the SIJ factors, noting that "the trial court is authorized to conclude that the petitioner failed to present evidence to support the SIJ factors or that the presented

evidence was not credible, [but] the court nevertheless has a duty to consider the SIJ factors and to make findings." *Id.*

[5] On remand following certification of the first appeal, on January 2, 2019, Avila filed a motion with the trial court to set a hearing. Initially, the trial court granted the motion and scheduled a hearing for February 15, 2019. On February 13, 2019, the trial court cancelled that hearing; the reason given for the cancellation was "Judicial Action." Appellant's App. Vol. II p. 5. The trial court then took no action on the case for three months, despite the urgency of the situation, given Irma's age and tenuous immigration status. On May 14, 2019, finally, the trial court entered an order that reads, in pertinent part, as follows:

> 10.    It does appear to this Court that reunification with the child's mother is possible. While the Court previously found the mother "abandoned" and "neglected" the child by allowing her to travel from Guatemala to the United States at the age of 16 alone, it does not appear to this Court that the child was physically removed from her residence and there has been no evidence presented to the Court that the child cannot return home to Guatemala if the child wanted to be reunited with her mother.

> 11.    Whether the child, who is now 19[1] years-old [sic], can financially support herself in Guatemala if the child's

---

[1] One might question whether this case is moot, inasmuch as Irma has reached the age of majority. We decline to find it to be moot, both because it relates to issues of great public importance that are likely to reoccur and because it may have significant implications for Irma's immigration status, even now that she is a legal adult.

mother refused to provide financial support to the child and/or could not provide financial support, there has been no evidence presented to this Court on whether or not that is possible. This Court is not an expert on the state of affairs in Guatemala. Whether it is in the child's best interests for the child to remain in the United States is impossible for this court to decide. If the standard for determining whether or not it is in the child's best interest to remain in the United States is based solely on financial considerations, then it would appear the child's best interests would be to remain in the United States. This Court is sure the child's life in the United States is better in many ways than when the child resided in Guatemala. Whether the child's desire to be with her brother and for a better life financially is a basis for the child to remain in the United States is for the United States Government to decide.

Appealed Order p. 2-3. In other words, the trial court failed to make a finding as to whether reunification between Irma and her parents is viable and refused to make a finding regarding whether it is in Irma's best interests to remain in the United States. Avila now appeals.

# Discussion and Decision

[6] As noted above, trial courts in this situation are *required* to consider and make findings on two statutory elements: (1) is reunification with one or both parents viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) would it be in the special immigrant's best interest to be returned to her previous country of nationality or country of last habitual residence? *See* 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).

## *Viability of Reunification*

[7] While the trial court here found that it is *possible* for reunification between Irma and her mother to occur, it failed to consider whether that reunification is *viable*.[2] This is not a meaningless distinction, as these two words have very different meanings.

- "Possible" means, among other things, "being within the limits of ability, capacity, or realization," or "being something that may or may not occur . . . ." Merriam-Webster Dictionary, at https://www.merriam-webster.com/dictionary/possible.

- "Viable" means, in pertinent part, "having a reasonable chance of succeeding . . . ." Merriam-Webster Dictionary, at https://www.merriam-webster.com/dictionary/viable.

In other words, to refuse to make this finding, a trial court must have evidence showing that there is a reasonable chance that reunification will succeed.

[8] Here, in the order that was the subject of the first appeal, the trial court made the following relevant findings:

5. . . . Irma's parents are unable and unwilling to care for or supervise Irma.

6. . . . According to IC 31-21-2-2, "abandoned" means left without provision for reasonable and necessary care or supervision. Accordingly, Irma's mother neglected and

---

[2] It also failed to consider the viability of reunification between Irma and her father. It is undisputed that he is deceased, meaning that reunification with him is not viable.

abandoned Irma by allowing her to travel across several countries alone.

*** 

11. For the foregoing reasons, the Court further finds that:

    a.    Irma has been abandoned and neglected by both of her parents in that her father abandoned her before birth and died, and her mother allowed her [to] make a dangerous journey across several countries alone . . . .

Appellant's App. p. 34. And in the order at issue in this appeal, the trial court made the following additional findings:

3. Sometime around November, 2016, the biological mother, according to the sworn testimony of [Avila] and the child, decided she could not financially support the child and the mother wanted the child to travel to the United States to be with [Avila].

4. While the child was living in Guatemala, the child resided with her mother, grandparents and uncles and sometimes they had nothing to eat as the mother was not employed but the child did have shelter and did go to school until the age of 16.

5. According to the sworn testimony of the child, on November 15, 2016, the child left Guatemala alone on a bus to travel from Guatemala to the border of the United States . . . .

Appealed Order p. 1-2.

[9] We can only conclude that the trial court's own findings support a conclusion that reunification between Irma and her mother is not viable—not likely to succeed. When Irma lived with her mother, she did not have enough to eat, and her mother, being unable to provide for or take care of her daughter, put sixteen-year-old Irma on a bus, alone, to travel illegally to another country. Nothing in the record suggests that circumstances have changed for Irma's mother. The trial court focused on whether there was evidence that Irma was physically removed from her residence, but this straw man of an analysis is not part of the statutory consideration of viability. Both the evidence in the record and the trial court's own findings of fact lead to one inescapable conclusion: reunification with one or both parents is not viable due to abandonment and/or neglect.

[10] Next, we must consider whether it would be in Irma's best interest to be returned to Guatemala or to remain in the United States. Here, again, we turn to the trial court's findings in the order at issue in this appeal. In addition to the above findings related to Irma's living conditions in Guatemala, the trial court found that "[s]ince January 2017, the child has been residing with [Avila] at his home in Jackson County, Indiana and has been providing the child her nutritional needs, educational needs and other appropriate needs." Appealed Order p. 2.

[11] The evidence in the record is undisputed[3] that Irma's needs were not being met in Guatemala, and that they are being met in the United States. The trial court concluded that "[w]hether it is in the child's best interests for the child to remain in the United States is impossible for this Court to decide." *Id.* at 2-3. We are, frankly, perplexed by this statement. Trial courts make determinations regarding the best interests of children every day in this State, and they do so based on the evidence in the record before them. Nothing in an SIJ determination is any different than any other best interests determination, meaning that the determination "should be based on the totality of the circumstances" before the trial court. *M.H. v. Ind. Dep't of Child Servs.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012).

[12] Therefore, in considering what is in Irma's best interests, the trial court should have considered financial matters—which is the only thing it focused on—as well as, for example, education, housing, nutrition, and healthcare. While Irma did attend school and have housing in Guatemala, the record reveals that her nutritional needs were not being met and that her mother could not afford to send her to a doctor when needed. In the United States, however, all these needs are being met. At the time of the guardianship hearing, Irma was attending high school, had a comfortable home and a place to sleep, had

---

[3] We note that the trial court did not find that the testimony of Irma or Avila was not credible or that they failed to present evidence to support the SIJ factors. Instead, it focused on the possibility—rather than viability—of reunification and declared it impossible to make a best interests determination.

enough food to eat, and had financial and emotional support from Avila, her brother.

[13] While it is ultimately for the federal government to determine whether Irma may remain in the United States, it was incumbent upon the trial court to make SIJ findings, including a best interests determination. Here, it refused to do so, which was erroneous. We can only conclude, based on the evidence in the record, that it would not be in her best interest to return to Guatemala.

[14] Normally, we would remand to the trial court to make the appropriate findings. But we have already done that once and the trial court refused to comply with our instructions on remand. There is a clock that is ticking for Irma, in that she must provide the federal government with an order containing the SIJ findings by December 28, 2019. Given that the trial court took an inordinate amount of time to issue its order following the first appeal and that it refused to make the required findings a second time, we will exercise our authority pursuant to Indiana Appellate Rule 66(C)(10) allowing us to grant any appropriate relief.

[15] Based on the evidence in the record and the trial court's findings of fact, we order the trial court to enter an order with the following findings:

1. Irma Elisabeth Avila Luis has been abandoned and neglected by both of her parents in that her father abandoned her before birth and died, and her mother allowed her to make a dangerous journey across several countries alone and was unable or unwilling to provide for her basic needs, including food and healthcare;

2.	Reuniting Irma Elisabeth Avila Luis with either her mother or her father is not viable;

3.	It is not in Irma Elisabeth Avila Luis's best interest to be returned to Guatemala; and

4.	It is in Irma Elisabeth Avila Luis's best interest to remain in the United States and under the guardianship of her brother, Ramiro Velasquez Avila.

The trial court is ordered to include these findings, verbatim, and to enter this order within one business day of the certification of this appeal.

The judgment of the trial court is reversed and remanded with instructions.

Kirsch, J., and Crone, J., concur.