

FILED
Nov 08 2018, 8:42 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas J.O. Moore
Indianapolis, Indiana

Alexander E. Budzenski
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of Irma Elisabeth Avila Luis | November 8, 2018 |
| | Court of Appeals Case No. 18A-GU-1312 |
| Ramiro Velasquez Avila, | Appeal from the Jackson Circuit Court |
| *Appellant-Petitioner.* | The Honorable Richard W. Poynter, Judge |
| | Trial Court Cause No. 36C01-1803-GU-9 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Ramiro Velasquez Avila (Avila), appeals the trial court's Order appointing him guardian of his minor sister, Irma Elisabeth Avila Luis (Irma), because the trial court refused to articulate special immigrant juvenile findings in accordance with 8 U.S.C. § 1101(a)(27)(J).

We affirm in part, reverse in part, and remand with instructions.

# ISSUE

Avila presents us with one issue on appeal, which we restate as: Whether the trial court was required to make findings on Irma's special immigrant juvenile status in accordance with 8 U.S.C. § 1101(a)(27)(J).

# FACTS AND PROCEDURAL HISTORY

Irma, born on May 20, 2000, in Chisec, Guatemala, is a native and citizen of Guatemala. Irma's father, Hilario Velasquez de la Cruz, died when she was three years old. Until 2016, Irma lived with her mother, Julia Avila Luis (Mother), in Guatemala. In 2016, Mother became unable to provide care for Irma. She no longer could afford to feed Irma, send her to school, and provide her with medical care. Mother put Irma on a bus to the United States.

After several weeks of travelling alone to the Mexican-American border, Irma entered the United States and was detained by immigration officials and taken into federal custody. Eventually, the federal government released Irma into the custody of her brother, Avila, who resides in Seymour, Indiana. Since her

release from federal custody, Irma has lived with her brother in Indiana. She is studying English and attending Seymour High School in the tenth grade. Avila meets Irma's basic needs and supports her financially and emotionally.

[6] On March 2, 2018, Avila petitioned the trial court to appoint him as guardian of his sister and requested the trial court to make certain findings necessary for Irma to seek classification as a special immigrant juvenile before the United States Citizenship and Immigration Services (USCIS) in accordance with 8 U.S.C. § 1101(a)(27)(J). On May 11, 2018, the trial court conducted a hearing on Avila's petition. During the hearing, the trial court felt "very uncomfortable making those kinds of findings." (Transcript p. 17). The court stated that it had "a real problem" because the federal government "[t]hrowing it on me to make factual findings for them [is] irritat[ing]." (Tr. p. 20). "It should be made by [f]ederal officials. They're the one that makes the decision of who comes in the United States, who leave the United States, not me. And that's why I have a problem with this . . .. Immigration [j]udges are [i]mmigration [j]udges for a reason. That's their decision." (Tr. pp. 21-22). On May 17, 2018, the trial court issued its findings of facts and Order, appointing Avila as guardian of Irma and finding, in pertinent part:

> 6. Irma's mother, [Mother], is a native of Guatemala. According to [I.C. §] 31-21-2-2, "abandoned" means left without provision for reasonable and necessary care or supervision. Accordingly, Irma's mother neglected and abandoned Irma by allowing her to travel across several countries alone.

7. Irma's father, [], was a native of Guatemala. He died on October 6, 2003, and abandoned Irma before she was born. He was never a part of her life and passed away when she was three years old.

8. [Avila], petitioner, is Irma's brother. Petitioner is twenty-one (21) years old and resides in Seymour, Indiana with Irma.

9. No person has objected to Petitioner being appointed Guardian of Irma.

10. Irma cannot care for herself.

11. For the foregoing reasons, the [c]ourt further finds that:

> a. Irma has been abandoned and neglected by both of her parents in that her father abandoned her before birth and died, and her mother allowed her [to] make a dangerous journey across several countries alone[.]

(Appellant's App. Vol. II, p. 5).

[7]     Avila now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[8]     Avila does not contest the trial court's affirmative findings. The trial court's Order is silent, however, with regard to the requested findings on Irma's immigration status, and Avila contends that the trial court erred by failing to articulate such findings. Although there are no appellate decisions in Indiana discussing the procedure for obtaining special immigrant juvenile status before

our state juvenile courts, our sister states have created a wealth of case law which we will consult for guidance and interpretation in this issue of first impression.

[9]    Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for "special immigrant juvenile" (SIJ) status. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. "Congress created the SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent citizens." *In the Interest of J.J.X.C., a Child*, 318 Ga. App. 420, 424 (Ga. Ct. App. 2012).

[10]   To be eligible to petition the federal government for SIJ status, the resident alien must be under the age of 21 and unmarried. 8 C.F.R. § 204.11(c). The child must have been declared dependent upon a state juvenile court "or whom the court . . . has legally . . . placed under the custody of . . . an individual[.]" 8 U.S.C. § 1101(a)(27)(J). In addition, the juvenile court must make two additional findings: (1) "reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i), (ii). The language of the first finding is designed to "prevent youths from using this remedy for the purpose of obtaining legal permanent resident status, rather than for the purpose of obtaining relief from abuse or neglect." *In re Erick M.*, 820 N.W.2d 639, 645 (Neb. 2012) (quoting 3 Charles Gordon et al., Immigration Law and

Procedure § 35.09(1) at 35-36 (rev. ed. 2001), citing H.R. Rep. No. 105-405(1997) (Conf. Rep.)). Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. 8 U.S.C. § 1101(a)(27(J)(iii).

[11] Accordingly, the process for obtaining SIJ status is "'a unique hybrid procedure that directs the collaboration of state and federal systems.'" *In re Marisol N.H.*, 115 A.D. 3d 185, 188 (N.Y. App. Div. 2014) (*quoting In re Hei Ting C.*, 109 A.D. 3d 100, 104 (N.Y. 2013)). In this hybrid proceeding, the state juvenile court is charged with making the factual inquiry relevant to SIJ status when an unmarried, resident alien child is found to be dependent on the court. "The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *In re J.J.X.C.*, 318 Ga. App. at 425. Therefore, courts in other states have held that a juvenile court errs by failing to consider a request for SIJ findings. *See id.*; *In re Mohammed B.*, 83 A.D. 3d 829, 831 (N.Y.A.D. 2011) (child moved for SIJ findings during guardianship proceeding in family court); *In re Interest of Luis G.*, 764 N.W. 2d 648 (Neb. 2009) (motions regarding SIJ status filed during juvenile cases addressing guardianship and foster care). "By making these preliminary factual findings, the juvenile court is not rendering an immigration determination." *H.S.P. v. J.K.*, 121 A.3d 849, 858 (N.J. 2015). The predicate order issued by a state court is merely a prerequisite that must be fulfilled before a juvenile can submit his or

her application for SIJ status to USCIS in the form of an I-360 petition. *Id*. If USCIS approves the juvenile's I-360, he or she will be granted SIJ status. *Id*.

[12] Thus, a state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country. As aptly observed by the court in *Mario S.*, the SIJ statute and accompanying regulations

> commit . . . specific and limited issues to state juvenile courts. The juvenile court need not determine any other issues, such as what the motivation of the juvenile in making application for the required findings might be; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety; and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as a SIJ.

*In re Mario S*. 954 N.Y.S.2d 843, 852-53 (N.Y. Fam. Ct. 2012) (internal citations omitted). *Mario S.* further explained that if "the USCIS denies a juvenile alien's application for legal permanent residence as a [SIJ]," the juvenile's remedy lies not in state court, but instead the juvenile must "seek review of the agency's decision in federal court." *Id*. State courts play no role in the final determination of SIJ status, or ultimately, permanent residency or citizenship, which are federal questions. Nothing in 8 U.S.C. § 1101(a)(27)(J) indicates that Congress intended state juvenile courts to pre-screen potential SIJ applications.

Rather, "[t]he juvenile court is simply called upon to determine" discrete factual issues, including "whether, under state law, the juvenile is under the age of 21, unmarried, dependent upon the court through an order of placement or other court order, whether reunification with one or both of the juvenile's parents is not possible due to abuse, neglect, or abandonment of the child, and whether it would be contrary to the juvenile's best interest to be returned to his or her previous country of nationality." *Id*. at 852.

[13] Thus, although state courts do not make immigration decisions, it is inescapable that a minor seeking SIJ status is dependent upon a state court to make the prerequisite findings in a predicate order for the minor to qualify for such status under the scheme established by federal immigration law. Here, however, the trial court's Order is silent regarding any decision on the SIJ factors despite Avila's request. Likewise, the trial court did not state a basis for declining to make SIJ findings nor did it state that it had considered the SIJ findings and rejected them. Although the trial court is authorized to conclude that the petitioner failed to present evidence to support the SIJ factors or that the presented evidence was not credible, the court nevertheless has a duty to consider the SIJ factors and to make findings. In this unusual setting, where a state court is charged with addressing an issue relevant only to federal immigration law, we cannot affirm the trial court's Order without some positive indication that the court actually addressed Avila's request. Accordingly, we affirm the trial court's appointment of a guardian but remand to the trial court with instruction to consider the request for SIJ findings in light of the evidence

presented and articulate the relevant determinations pursuant to 8 U.S.C. § 1101(a)(27)(J).

# CONCLUSION

[14] Based on the foregoing, we hold that the trial court erred when it failed to make findings on Irma's special immigrant juvenile status pursuant to 8 U.S.C. § 1101(a)(27)(J). Accordingly, we affirm the trial court's appointment of a guardian but remand for further proceedings in accordance with this decision.

[15] Affirmed in part, reversed in part, and remanded with instructions.

[16] Vaidik, C. J. and Kirsch, J. concur