FILED

Jun 05 2019, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Brian J. Paul
Erica K. Drew
Kayla D. Britton
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of Kevin Yafet Mendoza Bonilla | June 5, 2019 |
| Kevin Yafet Mendoza Bonilla aka Kevin Yafeth Mendoza Bonilla, a Minor, By his Next Friend, Perla Maily Bonilla Acosta, | Court of Appeals Case No. 18A-JP-2488 |
| | Appeal from the Marion Circuit Court |
| *Appellant*, | The Honorable Sheryl L. Lynch, Judge |
| v. | The Honorable Marie L. Kern, Magistrate |
| Marco Tulio Mendoza Maldonado, | Trial Court Cause No. 49C01-1607-JP-23926 |
| *Appellee*. | |

**Brown, Judge.**

[1] Kevin Yafet Mendoza Bonilla aka Kevin Yafeth Mendoza Bonilla ("Kevin") appeals the trial court's paternity order and denial of an amended order. Kevin raises one issue which we revise and restate as whether the trial court had the authority and duty to make requisite findings on his special immigrant juvenile status in accordance with 8 U.S.C. § 1101(a)(27)(J). We reverse and remand.

## Facts and Procedural History

[2] On July 6, 2016, Kevin by his next friend and mother, Perla Maily Bonilla Acosta ("Mother"), filed a verified petition to establish paternity in the Marion Circuit Court. The petition requested that the court issue findings of fact and conclusions of law regarding Kevin's care including that "[i]t is not in Kevin's best interests to return to his home country of Honduras because: (1) there are no suitable adults there who can provide for his care and (2) there are dangerous living conditions in that country," and that Kevin cannot be reunited with his father, Marco Tulio Mendoza Maldonado ("Father"), due to Father's abandonment of Kevin. Appellant's Appendix Volume II at 9. On July 8, 2016, Mother filed an "Affidavit of [Mother] Pursuant to Uniform Child Custody Jurisdiction Act." *Id.* at 11 (capitalization omitted).

[3] On November 16, 2017, Kevin by Mother as next friend filed a Motion for Court to Issue an Order Establishing Paternity or in the Alternative to Set a Hearing to Establish Paternity. That same day, Father filed a Consent to Jurisdiction in which he asserted that Kevin was born to him and Mother on January 26, 2000, and that he ceased contact with Kevin on the day Kevin was born, did not continue a parental relationship after that time, and did not

dispute any of the factual allegations contained in the petition. On November 30, 2017, Kevin by Mother as next friend filed a Motion for Expedited Hearing.

[4] On March 27, 2018, the court held a hearing. The court stated: "My review of the file suggest[s] that you are attempting to get an order from this Court to establish special juvenile immigration status, counsel is that correct?" Transcript at 4. Mother's counsel indicated that was correct. The court stated in part: "Yeah, unfortunately counsel this is not the first time this has come up here. This is an issue that we have looked at extensively and we believe that as the law is currently written in the State of Indiana, we have limitations in terms of what this Court's ability to find and enter based upon the way the law is currently written." *Id.* at 5. The court also stated that "[t]here is no language with regards to an abandonment finding that this Court can make it does not pertain to JP actions in any way." *Id.* at 6. The court stated:

> [T]he federal law requires me to be able to make a finding that it is not viable for the child to be returned to one or both parents and their custody, well a. I have a problem that we are now dealing with an adult and b. again I do not know I can make that finding because under current Indiana law at most I can find that the child would be emotionally impaired or physically endangered if a parents' parenting time was unrestricted.

*Id.* The court further stated that it did not believe it had the legal authority to make certain findings.

[5] Mother testified that Kevin was born on January 26, 2000, and that he came to the United States in 2015 because he had been threatened by gangs. She

testified that Kevin was in high school, that Father was not involved in parenting and currently lives in Honduras and has not contributed any support, that Father abandoned Kevin and that it was not possible that Kevin be reunited with Father, that it was not in Kevin's best interest to return to Honduras because he was threatened by a gang and Honduras is dangerous, and that she financially supported Kevin.

[6] On May 4, 2018, Kevin by Mother as next friend filed a Supplemental Brief and Authorities in Support of and Request for Order Regarding Petitioner's Eligibility for Special Immigrant Juvenile Status Under 8 U.S.C. § 1101(a)(27)(J).

[7] On July 23, 2018, the court entered an order establishing paternity of Kevin in Father, giving Mother sole legal and physical custody and finding that: "[f]or all intents and purposes, [Father] effectively abandoned the child at birth, leaving Mother as the sole care provider"; Father "effectively abandoned the child at birth, having provided no physical, emotional or financial support of the child in 18 years"; and "return to Honduras poses a risk of harm or injury to the minor child, and as such, [the court] does not find that it is in the child's best interests to return to Honduras." Appellant's Appendix Volume II at 119-120.

[8] On July 30, 2018, Kevin by Mother as next friend filed a Motion for Clarification of Final Order. He asserted that to be eligible to apply to U.S. Citizenship and Immigration Services for Special Immigrant Status, a "juvenile or State court" must first make several findings of fact, including that "[t]he

child's reunification with one or both parents is not viable due to abuse, neglect, abandonment, or similar basis found under State law within the meaning of 8 U.S.C. § 1101(a)(27)(J)." *Id.* at 122. He also requested the court to clarify its final order to specify its authority to enter the order and that the child's reunification with Father was not viable due to Father's abandonment and to enter an order substantially similar to the court's final order reflecting such a finding. He requested that the amended order include the following language: "Based on the record of this case and [Father's] abandonment of this child, reunification with [Father] is not viable." *Id.* at 123. On October 4, 2018, the court denied entry of an amended final order and stated: "The Court cannot make a finding based upon the application of federal law and there is no comparable basis for a finding of abandonment within the Indiana state paternity statutory authority." *Id.* at 125.

## *Discussion*

[9] Before addressing the issue raised by Kevin, we note that Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments, and we apply a less stringent standard of review; that is, we may reverse if the appellant establishes *prima facie* error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002).

Questions of law are still reviewed *de novo*. *McClure v. Cooper*, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

[10] "Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for 'special immigrant juvenile' (SIJ) status." *Matter of Guardianship of Luis*, 114 N.E.3d 855, 857 (Ind. Ct. App. 2018) (citing 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11). "Congress created the SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent citizens." *Id.* (quoting *In the Interest of J.J.X.C., a Child*, 318 Ga. App. 420, 424, 734 S.E.2d 120 (Ga. Ct. App. 2012)).

[11] Kevin argues that the special immigrant status process directs the collaboration of state and federal systems. He contends that the trial court has authority to make all requisite SIJ findings and must consider the evidence and present findings for or against the juvenile. He cites *Luis*, 114 N.E.3d 855, and asserts that *Luis* is consistent with the decisions of other state appellate courts that have similarly ruled that state juvenile courts must entertain a request for SIJ findings and issue a ruling accordingly. He also argues that existing Indiana law provides ample authority for juvenile courts to issue SIJ findings in paternity cases. He points out that the concept of abandonment is addressed in Ind. Code § 31-9-2-0.3, which provides that "'[a]bandoned', for purposes of the Uniform Child Custody Jurisdiction Act under IC 31-21, has the meaning set forth in IC 31-21-2-2," which provides that "'[a]bandoned' means left without provision for reasonable and necessary care or supervision." Kevin cites Ind.

Code § 31-14-13-2, which provides that a court shall consider all relevant factors in determining custody in a paternity action including "[t]he interaction and interrelationship of the child with . . . the child's parents . . . ." He also cites Ind. Code § 31-14-5-2, which provides in part that "a child may file a paternity petition at any time before the child reaches twenty (20) years of age."

[12] This Court recently addressed a similar issue in *Luis* and discussed the process for petitioning the federal government for SIJ status as follows:

> To be eligible to petition the federal government for SIJ status, the resident alien must be under the age of 21 and unmarried. 8 C.F.R. § 204.11(c). The child must have been declared dependent upon a state juvenile court "or whom the court . . . has legally . . . placed under the custody of . . . an individual[.]" 8 U.S.C. § 1101(a)(27)(J). In addition, the juvenile court must make two additional findings: (1) "reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i), (ii). The language of the first finding is designed to "prevent youths from using this remedy for the purpose of obtaining legal permanent resident status, rather than for the purpose of obtaining relief from abuse or neglect." *In re Erick M.*, 284 Neb. 340, 820 N.W.2d 639, 645 (2012) (quoting 3 Charles Gordon et al., Immigration Law and Procedure § 35.09(1) at 35-36 (rev. ed. 2001), citing H.R. Rep. No. 105-405(1997) (Conf. Rep.)). Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. 8 U.S.C. § 1101(a)(27(J)(iii).
>
> Accordingly, the process for obtaining SIJ status is "'a unique hybrid procedure that directs the collaboration of state and

federal systems.'" *In re Marisol N.H.*, 115 A.D. 3d 185, 188, 979 N.Y.S.2d 643 (N.Y. App. Div. 2014) (quoting *In re Hei Ting C.*, 109 A.D. 3d 100, 104, 969 N.Y.S.2d 150 (N.Y. 2013)). In this hybrid proceeding, the state juvenile court is charged with making the factual inquiry relevant to SIJ status when an unmarried, resident alien child is found to be dependent on the court. "The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *In re J.J.X.C.*, 318 Ga. App. at 425, 734 S.E.2d 120. Therefore, courts in other states have held that a juvenile court errs by failing to consider a request for SIJ findings. *See id.*; *In re Mohamed B.*, 83 A.D. 3d 829, 831, 921 N.Y.S.2d 145 (N.Y.A.D. 2011) (child moved for SIJ findings during guardianship proceeding in family court); *In re Interest of Luis G.*, 17 Neb.App. 377, 764 N.W.2d 648 (2009) (motions regarding SIJ status filed during juvenile cases addressing guardianship and foster care). "By making these preliminary factual findings, the juvenile court is not rendering an immigration determination." *H.S.P. v. J.K.*, 223 N.J. 196, 121 A.3d 849, 858 (2015). The predicate order issued by a state court is merely a prerequisite that must be fulfilled before a juvenile can submit his or her application for SIJ status to USCIS in the form of an I-360 petition. *Id.* If USCIS approves the juvenile's I-360, he or she will be granted SIJ status. *Id.*

Thus, a state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country. As aptly observed by the court in *Mario S.*, the SIJ statute and accompanying regulations

> commit . . . specific and limited issues to state
> juvenile courts. The juvenile court need not
> determine any other issues, such as what the
> motivation of the juvenile in making application for

the required findings might be; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety; and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as a SIJ.

*In re Mario S.* 38 Misc.3d 444, 954 N.Y.S.2d 843, 852-53 (N.Y. Fam. Ct. 2012) (internal citations omitted). *Mario S.* further explained that if "the USCIS denies a juvenile alien's application for legal permanent residence as a [SIJ]," the juvenile's remedy lies not in state court, but instead the juvenile must "seek review of the agency's decision in federal court." *Id.* State courts play no role in the final determination of SIJ status, or ultimately, permanent residency or citizenship, which are federal questions. Nothing in 8 U.S.C. § 1101(a)(27)(J) indicates that Congress intended state juvenile courts to pre-screen potential SIJ applications. Rather, "[t]he juvenile court is simply called upon to determine" discrete factual issues, including "whether, under state law, the juvenile is under the age of 21, unmarried, dependent upon the court through an order of placement or other court order, whether reunification with one or both of the juvenile's parents is not possible due to abuse, neglect, or abandonment of the child, and whether it would be contrary to the juvenile's best interest to be returned to his or her previous country of nationality." *Id.* at 852.

Thus, although state courts do not make immigration decisions, it is inescapable that a minor seeking SIJ status is dependent upon a state court to make the prerequisite findings in a predicate order for the minor to qualify for such status under the scheme established by federal immigration law.

*Luis*, 114 N.E.3d at 857-859.

[13] In *Luis*, the Court observed that the trial court's order was silent regarding any decision on the SIJ factors despite the petitioner's request and that the trial court did not state a basis for declining to make SIJ findings or that it had considered the SIJ findings and rejected them. *Id.* at 859. We held that, "[a]lthough the trial court is authorized to conclude that the petitioner failed to present evidence to support the SIJ factors or that the presented evidence was not credible, the court nevertheless has a duty to consider the SIJ factors and to make findings." *Id.* The Court also held that, "[i]n this unusual setting, where a state court is charged with addressing an issue relevant only to federal immigration law, we cannot affirm the trial court's Order without some positive indication that the court actually addressed [the petitioner's] request." *Id.* We concluded that the trial court erred when it failed to make findings on the petitioner's immigrant juvenile status pursuant to 8 U.S.C. § 1101(a)(27)(J) and remanded to the trial court with instructions to consider the request for SIJ findings in light of the evidence presented and articulate the relevant determinations pursuant to 8 U.S.C. § 1101(a)(27)(J). *Id.*

[14] In the present case, while the trial court stated in its October 4, 2018 order denying the entry of an amended order that it "cannot make a finding based upon the application of federal law and there is no comparable basis for a finding of abandonment within the Indiana state paternity statutory authority," the court had already found in its July 23, 2018 order that, "[f]or all intents and purposes, [Father] effectively abandoned the child at birth, leaving Mother as the sole care provider" and that Father "effectively abandoned the child at

birth, having provided no physical, emotional or financial support of the child in 18 years." Appellant's Appendix Volume II at 119, 125.

## *Conclusion*

[15] Based upon the record, Indiana statutory law, and in light of *Luis*, we conclude that Kevin has established *prima facie* error and we remand for the trial court to consider the request for SIJ findings and articulate the relevant determinations pursuant to 8 U.S.C. § 1101(a)(27)(J).

[16] For the foregoing reasons, we reverse and remand with instructions.

[17] Reversed and remanded.

May, J., and Mathias, J., concur.