

FILED

Nov 20 2019, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of Shirla Gonzalez Xitumul: | November 20, 2019 |
| | Court of Appeals Case No. 19A-GU-948 |
| Miguel Hernandez Jeronimo, | Appeal from the Decatur Circuit Court |
| *Appellant-Petitioner.* | The Honorable Timothy B. Day, Judge |
| | Trial Court Cause No. 16C01-1901-GU-1 |

**Robb, Judge.**

# Case Summary and Issue

[1] Miguel Hernandez Jeronimo ("Hernandez") filed a petition seeking to be appointed guardian of his niece, Shirla Gonzalez Xitumul ("Shirla") and also seeking certain findings that could enable Shirla to seek Special Immigrant Juvenile ("SIJ") status from the United States Citizen and Immigration Services ("USCIS"). At the time Hernandez filed the petition, he held a foreign power of attorney signed by Shirla's parents allowing him to act on their behalf with respect to Shirla. The trial court made findings relevant to Shirla's SIJ status but found it unnecessary to appoint Hernandez as her guardian because he already held the power of attorney. In this unopposed appeal, Hernandez raises the sole issue of whether the trial court erred in denying the petition. Concluding the trial court erred in finding the guardianship unnecessary, we reverse and remand.

# Facts and Procedural History

[2] Shirla resided in her native country of Guatemala until October of 2017 when, at fourteen years of age and with her mother's support, she began her journey to the United States. Shirla traveled with people she did not know, "by car or walking," because she "didn't feel secure" in Guatemala due to her "violent" relationship with her father: "He always hit me. He'd always get drunk. He threw me out of the house. Never – he was never there to support me, insults and mistreatment." Transcript, Volume 2 at 12-13. When Shirla arrived in the United States, she initially lived in a shelter for immigrants in Chicago, Illinois.

In October of 2018, she came to live with Hernandez and his family in Decatur County, Indiana. She does not think she could go back to Guatemala to live with her parents because she does not have the support there that she has here. Hernandez "treats [her] well[,]" supporting her and giving her an education, housing, clothing, and food. *Id.* at 14. She wishes Hernandez to be her guardian.

[3] Hernandez has lived in Indiana since 2007 and works in construction. He is a Guatemalan citizen and an illegal immigrant to this country. He does not believe Shirla could be reunited with her parents in Guatemala "because of what she had to live – she had to go through when she was living over there with her parents." *Id.* at 9. Shirla's only other relatives in Guatemala are on her father's side of the family. Hernandez thinks living in the United States is in Shirla's best interest because she can get an education, have better opportunities, and be protected. He supports Shirla emotionally and financially and wishes to be her guardian. At some point after Shirla came to live with Hernandez, Shirla's parents signed a document "renounc[ing] the parental authority, guardianship, and custody" of Shirla and giving Hernandez power of attorney "so that he can provide the essentials for her subsistence[.]" Appellant's Appendix, Volume 2 at 11.

[4] On January 2, 2019, Hernandez filed a petition seeking to be named guardian of Shirla, then sixteen years old and unmarried with no dependents. The petition alleged Shirla had been abused, abandoned, and neglected by her parents and that it is not in Shirla's best interest to return her to her home

country for those reasons; appointment of a guardian is necessary to ensure her proper care and supervision and specifically to "obtain decision-making powers in the following areas: healthcare, including treatment and access to medical records, and school enrollment"; and Hernandez is the best person to serve as guardian as Shirla resides with him. Shirla consented to the guardianship, but as to her parents, the petition alleges, "Shirla's parents have not objected to [Hernandez] being awarded guardianship of Shirla and it is not likely they will do so." *Id*. at 14-15.

> Wherefore, [Hernandez] requests that this Court . . . enter an Order finding that:
>
> 1. [Shirla] is an unmarried minor;
>
> 2. The Decatur County Circuit Court has jurisdiction over minors, and Shirla, as a minor, is dependent upon the Court per IC 29-3-5-1 et seq.;
>
> 3. The appointment of a guardian for [Shirla] is necessary;
>
> 4. Shirla has been physically and mentally abused by her father;
>
> 5. Shirla has been abandoned and neglected by both of her parents who forced her out of the home and left her with nowhere to live in Guatemala and sent her to journey across Guatemala, Mexico, and the United States alone;
>
> 6. Reunification with either parent is not a viable option;

7. Shirla has no parent willing or able to care for her in the United States;

\* \* \*

9. It is not in Shirla's best interests to be returned to her country of nationality and last residence, Guatemala . . . .

*Id.* at 15-16.

[5] The trial court held a hearing at which Hernandez and Shirla both testified. At the conclusion of the hearing, the trial court expressed concern over whether it had jurisdiction to entertain a petition by a non-citizen to be granted guardianship over another non-citizen. The trial court took the matter under advisement and asked Hernandez's attorney to file something "that will reassure me that I have the ability to entertain the petition itself, and the ability to grant the relief requested." Tr., Vol. 2 at 17. Hernandez filed a memorandum in support of the petition addressing the trial court's concerns. Hernandez also cited a recent case decided by the Court of Appeals, *Matter of Guardianship of Luis*, 114 N.E.3d 855 (Ind. Ct. App. 2018). *Luis* addressed for the first time in Indiana the procedure when a request for findings in support of an application for SIJ status has been made. *Id.* at 857-59.

[6] Following this submission, the trial court entered the following order, in pertinent part:

1. [Hernandez] is the maternal uncle of [Shirla]. [Hernandez] is not a legal resident of the United States. He has been living illegally in this country since at least 2007.

2. [Shirla] is sixteen (16) years of age. [She] is also not a legal resident of the United States. She traveled to this country approximately a year prior from Guatemala.

3. The Court has concerns as to whether it has the ability to grant a guardianship when no person involved is a United States citizen or has legal authority to reside in the United States.

4. Counsel for [Hernandez] provided to the Court a Power of Attorney signed by both [of Shirla's] parents . . ., which gives [Hernandez] full parental authority regarding [Shirla]. Evidence was presented that [Hernandez] has been caring for [Shirla] without issue, including [her] enrollment . . . in a public high school. The Power of Attorney should also allow [Hernandez] to seek medical attention for [Shirla] if the need arises.

5. The Court does not find that [Shirla's] parents . . . were notified of the filing of this guardianship as required by statute.

6. The Court is also unable to find that the guardianship requested herein is necessary as required by statute given the Power of Attorney extended to [Hernandez] by the [Shirla's] parents.

7. Counsel for [Hernandez] directed the Court to the case of *[Luis]* . . . . In that similar case it is unclear whether the [p]etititoner was a legal resident of the United States. Said case primarily involved a request for findings in support of the child's efforts to qualify for "special immigrant juvenile" status under Federal Law.

8. In the present case, no request for findings was made at [the] hearing. No mention was made that [Shirla] had ever been detained for immigration purposes. No mention was made that [Shirla] was seeking specific findings for any purpose other than the granting of the guardianship. No mention was made in the pleadings or at the hearing that [Shirla] was seeking "special immigrant juvenile" status under Federal Law.

9. The Court feels that [Hernandez] should have been more forthcoming as to the purpose of this litigation if the true purpose was to obtain findings in furtherance of [Shirla's] "special immigrant juvenile" status. Even though the guardianship requested herein is being denied, the Court will reluctantly find that evidence was presented that reunification with one or both of [Shirla's] parents is not viable due to abuse, neglect, abandonment by one or both parents, and it would not be in [Shirla's] best interest to be returned to her parents in Guatemala.

It is therefore ordered by the court that the Petition for Appointment of Guardian filed herein is denied as not necessary.

Appealed Order at 1-2. Hernandez now appeals the denial of the petition.[1]

# Discussion and Decision

## I. Standard of Review

Findings and orders issued in guardianship proceedings are within the discretion of the trial court. *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind.

---

[1] The petition was unopposed in the trial court and no appellee's brief has been filed in this appeal.

Ct. App. 2014), *trans. denied*; *see also* Ind. Code § 29-3-2-4(a). Accordingly, we review a trial court's findings for an abuse of discretion, which occurs when the decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.* We review any questions of law de novo, however, affording no deference to the trial court's legal conclusions. *Id.*

## II. Special Immigrant Juvenile Status

[8] Congress created the special immigrant juvenile ("SIJ") status "to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents" despite their unauthorized entry into or unlawful presence in the United States. *Luis*, 114 N.E.3d at 857 (quoting *In the Interest of J.J.X.C., a Child*, 734 S.E.2d 120, 123 (Ga. Ct. App. 2012)). A "special immigrant" includes a person:

- who is unmarried,
- who under the age of twenty-one,
- who is present in the United States,
- who has been legally committed to or placed in the custody of an individual by a juvenile court located in the United States,
- "whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[,]" and

- "for whom it has been determined . . . that it would not be in the alien's best interest to be returned to the alien's . . . previous country of nationality[.]"

8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)(1), (c)(2).[2]

[9]     A state juvenile court determines whether the evidence supports the required findings, but the final decision regarding SIJ status rests with the federal government. 8 U.S.C. § 1101(a)(27)(J)(iii). Thus, the process for obtaining SIJ status is "a unique hybrid procedure that directs the collaboration of state and federal systems." *Luis*, 114 N.E.3d at 858 (quoting *In re Marisol N.H.*, 979 N.Y.S.2d 643, 645 (N.Y. App. Div. 2014)). The juvenile, or someone acting on his or her behalf, must first petition a state juvenile court to issue an order making the required findings. *In re Marisol N.H.*, 979 N.Y.S.2d at 645. This is often accomplished by the filing of a guardianship petition or custody complaint. *In re Dany G.*, 117 A.3d 650, 654 (Md. Ct. Spec. App. 2015). The state juvenile court, "as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests[,]" is then charged with making the factual inquiry relevant to SIJ status and entering an order regarding its findings. *Luis*, 114 N.E.3d at 858 (quoting *In re J.J.X.C.*, 734

---

[2] The immigrant must also be deemed eligible for long-term foster care. 8 C.F.R. § 204.11(c)(4). "Eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. § 204.11(a). For purposes of establishing eligibility for classification as an SIJ, a child who has been placed in a guardianship situation is considered eligible for long-term foster care. *Id.*

S.E.2d at 124). Upon obtaining such an order, the juvenile can submit his or her application for SIJ status to the USCIS. *See id*; *see also* 8 C.F.R. § 204.11(d). If the application is granted, the juvenile may become a lawful permanent resident who is eligible to become a United States citizen after five years. *In re Estate of Nina L. ex rel. Howerton*, 41 N.E.3d 930, 935 (Ill. App. Ct. 2015).

As *Luis* pointed out, "it is inescapable that a minor seeking SIJ status is dependent upon a state court to make the prerequisite findings in a predicate order for the minor to qualify for such status under the scheme established by federal immigration law." 114 N.E.3d at 859. With this procedure in mind, we turn to the proceedings in this case.

## III.  Guardianship Petition

At the hearing and in its order, the trial court expressed concern over its ability to enter a guardianship order when the proposed guardian and the ward are both illegal immigrants. *See* Tr., Vol. 2 at 15-16 (trial court stating, "[W]e have a non-citizen of our country asking me to grant him relief under the laws of our country. . . . To grant guardianship over again, a non-citizen. . . . So I don't know where I stand as a state court, in my ability to grant this[.]"); Appealed Order at 1 ("The Court has concerns as to whether it has the ability to grant a guardianship when no person involved is a United States citizen or has legal authority to reside in the United States.").

We begin with the jurisdiction of the court in general. "Circuit courts are courts of general jurisdiction, empowered to hear all types of cases, including

guardianship actions." *In re B.J.N.*, 19 N.E.3d 765, 768 (Ind. Ct. App. 2014). Indiana Code section 29-3-2-1(b) provides that the court has exclusive original jurisdiction with respect to a minor over all matters concerning guardians, with certain exceptions not applicable in this case. Therefore, the trial court has subject matter jurisdiction over this action for guardianship of a minor. Moreover, federal law defines a "juvenile court" able to make the requisite SIJ findings in a predicate order as a court "having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). Because the care and custody of a child is determined in a guardianship action in Indiana, the trial court here qualifies as a "juvenile court" able to make SIJ findings.

[13] As for the trial court's specific concern about how Hernandez and Shirla's citizenship status might affect its authority in this specific case, Indiana Code section 29-3-5-1 provides that "*[a]ny person* may file a petition for the appointment of *a person* to serve as guardian for an incapacitated person or *minor*[.]" Ind. Code § 29-3-5-1(a) (emphasis added). "Person" is defined as "*an individual*, an organization, an association, a nonprofit corporation, a corporation for profit, a limited liability company, a partnership, a financial institution, a trust, the division of family resources or other governmental entity, or other legal entity." Ind. Code § 29-3-1-12 (emphasis added). The court "*shall* appoint as guardian a qualified *person or persons* most suitable and willing to serve[.]" Ind. Code § 29-3-5-4 (emphasis added). The only restrictions on who may be appointed to serve as a guardian based upon the

status of that person are found in Indiana Code section 29-3-7-7, and all concern persons with criminal records. There is no restriction based on citizenship status. *Cf.* Ind. Code § 34-28-2-2.5 (when petitioning for a change of name, the person must include proof that the person is a United States citizen). In addition, a "minor" is simply defined as an "individual who is less than eighteen (18) years of age and who is not an emancipated minor." Ind. Code § 29-3-1-10. Therefore, under the relevant statutes and definitions, neither the citizenship of the proposed guardian nor the citizenship of the minor impacts whether a petition for guardianship can be filed or granted.[3]

[14] In its order, the trial court stated, "No mention was made in the pleadings or at the hearing that [Shirla] was seeking 'special immigrant juvenile' status under Federal Law" and indicated Hernandez "should have been more forthcoming as to the purpose of this litigation if the true purpose was to obtain findings in furtherance of [Shirla's] 'special immigrant juvenile' status." Appealed Order at 2. Hernandez contends that he was "sufficiently forthcoming about seeking special-immigrant-juvenile findings" because he requested those findings in his petition and cited *Luis* both at the hearing and in his post-hearing brief. Brief of Appellant at 14. We agree Hernandez's petition sought findings on the predicate facts required for Shirla to apply for SIJ status. However, Hernandez

---

[3] The trial court also mentioned lack of notice to Shirla's parents. This court has previously established that there is "no authority for the proposition that the failure to comply with the notice requirements of [Indiana Code section] 29-3-6-1 automatically invalidates an appointment of permanent guardianship[.]" *Wells v. Guardianship of Wells*, 731 N.E.2d 1047, 1050 (Ind. Ct. App. 2000), *trans. denied*.

never clearly articulated that purpose to the court. The petition never mentions special immigrant juvenile status, and at the conclusion of the hearing, Hernandez's counsel simply agreed without elaboration when the trial court stated, "So basically, you're asking that I grant guardianship." Tr., Vol. 2 at 15. When citing *Luis* to the trial court at the hearing, counsel only said the case "addresses the state court's role in adjudicating these – these sorts of petitions." *Id.* at 16. Citation to "pertinent authority" in a guardianship petition or specific invocation of SIJ status at a hearing may not be required. *See* Appellant's Brief at 14; *see also Simbaina v. Bunay*, 109 A.3d 191, 200 (Md. Ct. Spec. App. 2015) (noting the federal statute has no specific pleading requirements). However, it is certainly not prohibited. And indeed, it is likely a good idea to be forthcoming in order to avoid situations such as this, where the relief requested was oblique at best and the lack of clarity likely contributed to the order failing to meet the requirements of an SIJ predicate order. *See Simbaina*, 109 A.3d at 201 ("When pleading this issue before the . . . court, a moving party should ensure that the court is on notice of the request for these factual findings."). Nonetheless, the issue was before the trial court.

[15] In *Luis*, this court held that a trial court errs by failing to make the SIJ findings if the matter is properly before the court. 114 N.E.3d at 858. The trial court is authorized to conclude that the petitioner failed to present evidence supporting the SIJ factors or that the evidence presented was not credible, but the court has a duty to consider the factors and make relevant findings. *Id.* at 859. In *Luis*, the trial court granted the guardianship but was silent as to the SIJ factors,

neither making findings nor stating that it had considered the factors and rejected them. We therefore remanded to the trial court to consider the request for SIJ findings. *Id.* Here, we have the opposite situation: the trial court denied the guardianship but made basic SIJ findings. However, because a predicate order must make findings about 1) dependency or custody, 2) parental reunification, *and* 3) best interests, we reach a similar conclusion.

[16]     With respect to Shirla's dependency or custody, the trial court found that a guardianship was not necessary because Hernandez already had a power of attorney entitling him to act on Shirla's behalf. However, a guardian appointed by a court to have the care and custody of the person or property of a minor, *see* Ind. Code § 29-3-1-6, and an attorney in fact designated to act for a principal under a power of attorney, *see* Ind. Code § 30-5-2-2, are not interchangeable and the existence of one does not preclude the other. *Cf.* Ind. Code § 29-3-5-5(a)(6)(B) (stating a person nominated by a power of attorney of a living parent is entitled to consideration as a guardian). And in a case seeking an SIJ predicate order, the "appointment of a guardian constitutes the *necessary declaration of dependency* on the juvenile court." *In re Estate of Nina L.*, 41 N.E.3d at 934 (emphasis added). Whether or not Hernandez must have the status of guardian to enroll Shirla in school or seek medical treatment for her, it *is* necessary that he be named her guardian so that she can apply for SIJ status. Thus, it appears the trial court considered the question of the "necessity" of this guardianship through the wrong lens and erred in declaring the guardianship unnecessary because of the power of attorney.

[17]    We do note, however, that even when considering the necessity of the guardianship for federal SIJ status, the appointment of a guardian is guided by state statute. *In re Guardianship of Hollenga*, 852 N.E.2d 933, 937 (Ind. Ct. App. 2006). Thus, the trial court must still determine if Hernandez is "a qualified person" to be named Shirla's guardian. Ind. Code § 29-3-5-4. In making that determination, the trial court must give due regard to several factors, including Shirla's wishes as a minor at least fourteen years of age and the best interests of herself and her property. Ind. Code § 29-3-5-4(5), (9). The key consideration, as always, is that the choice of guardian be in the minor's best interests. *In re Guardianship of A.L.C.*, 902 N.E.2d 343, 353 (Ind. Ct. App. 2009).

[18]    As for the remaining two findings required in an SIJ predicate order, the trial court "reluctantly" made findings about reunification and Shirla's best interests, essentially tracking the language of federal law about SIJ findings. Appealed Order at 2; *see* 8 U.S.C. § 1101(a)(27)(J)(i), (ii); 8 C.F.R. § 204.11. "[I]t is imperative that the predicate order be worded very precisely and contain all necessary language. . . . [W]hile the predicate order does not have to recount every detail of the case, the federal government requires that it 'must show the factual basis for the court's findings.'" *In re Dany G.*, 117 A.3d at 656; *see also* USCIS Policy Manual, Volume 6, Part J, Chapter 3, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-3 (noting the predicate order "should not just mirror or cite to immigration law and regulations[,]" and stating the order should specifically indicate 1) with whom the child is placed and why, 2) which of the specific grounds (abuse, neglect,

abandonment, etc.) apply to which parent[4] and the factual basis for finding reunification is not viable, and 3) the factual basis for determining it is not in the child's best interest to return to his or her home country). Therefore, the trial court's "reluctant" findings using only the basic language found in the United States Code are likely insufficient to support an SIJ application.

[19] As the Illinois Appellate Court has noted, "the potential benefits associated with SIJ status are substantial, [but a minor's] decision to pursue SIJ status is not without risk. Relief is not guaranteed and denial of the application renders [the minor] subject to deportation as an undocumented immigrant." *In re Estate of Nina L.*, 41 N.E.3d at 938-39. When a minor is willing to assume that risk, the "opportunity to pursue SIJ status should not be thwarted by [a court's] refusal to make the findings necessary to allow [the] application to proceed." *Id.* at 939. Here, the trial court has already found that Shirla has met two of the three requirements to apply for SIJ status, though without the specificity required of a predicate order. Accordingly, we remand to the trial court with instructions to reconsider the request for guardianship in light of Indiana law and the request for SIJ findings and, if the guardianship is granted, to issue a predicate order with the appropriate findings.

# Conclusion

---

[4] Abuse, neglect, or abandonment by one parent is sufficient for purposes of SIJ predicate findings. *In re Estate of Nina L.*, 41 N.E.3d at 937.

The trial court erred in concluding the guardianship was unnecessary based on the existence of a power of attorney. Accordingly, the trial court did not make a proper dependency determination and made only the most basic findings regarding the SIJ factors. We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Mathias, J., and Pyle, J., concur.