

FILED

Dec 27 2024, 11:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

In the Guardianship of:

S.S., Minor

Balwinder Kaur,

*Appellant-Petitioner*

---

December 27, 2024

Court of Appeals Case No.
24A-GU-2154

Appeal from the Johnson Superior Court

The Honorable Kevin M. Barton, Judge

Trial Court Cause No.
41D01-2404-GU-66

---

**Opinion by Judge Bradford**

Judges Bailey and Foley concur.

**Bradford, Judge.**

## Case Summary

[1] S.S. was born in 2006 in India and, prior to July of 2023, lived there with his parents and other family members. At some point, S.S. became involved with a political party, which led to harassment and violence by members of an opposing political party. In July of 2023, S.S.'s parents told him to leave their home for safety reasons, and he traveled first to El Salvador and then to the Mexico-United States border, where transportation to the Greenwood home of his aunt Balwinder Kaur was arranged.

[2] In April of 2024, Kaur petitioned the juvenile court to appoint her as S.S.'s legal guardian and requested that it enter specific findings of fact that would allow S.S. to pursue classification as a special immigrant juvenile ("SIJ") before the United States Citizenship and Immigration Services ("USCIS"). The juvenile court granted Kaur's petition for guardianship but denied her request for SIJ-related findings. The juvenile court denied Kaur's motion to correct error. Kaur contends that the juvenile court erred in refusing to find her requested SIJ-related findings, specifically that S.S. had been abandoned and/or neglected by his parents. Because we disagree, we affirm.

## Facts and Procedural History

[3] S.S. is a native and citizen of India, born on September 12, 2006.[1]  Prior to July of 2023, S.S. lived with his parents, grandmother, and older brother in Haryana, India.  S.S.'s natural father worked as a farmer in India, and his natural mother did not work outside the home.  At the hearing on May 20, 2024, S.S. testified about his upbringing and explained that he had frequently not had enough food to eat.  S.S. agreed that were times when there had not been enough food for the entire family to have a meal.  S.S. added that he had not always been regularly fed and would often eat only one, sometimes two, meals per day.

[4] In October of 2022, S.S. joined the Indian National Lok Dal Party ("INLDP") and began actively volunteering for and campaigning on behalf of it.  S.S. worked for the INLDP, in part, because it would provide him with food and occasionally with work and money.  Because of his involvement with the INLDP, S.S. became a target for abuse and persecution by members of the Bharatiya Janata Party ("BJP").  On two separate occasions, S.S. was abducted by members of the BJP, beaten, and threatened with death.  S.S. and his father attempted to report the abuse to the police, but the police refused to take the

---

[1] Although S.S. is no longer a minor, having turned eighteen in September of 2024, he is still eligible for SIJ status until he reaches the age of twenty-one.  *See* 8 C.F.R. § 204.11(b)(1) ("A petitioner is eligible for classification as a special immigrant juvenile [if, among other requirements, they are] under 21 years of age at the time of filing the petition[.]").

report and instead threatened to lock S.S. and his father in jail if they again tried to file a report against workers of the BJP.

[5] Following these incidents, S.S.'s parents ordered him to stop attending school and cease his political activities. When S.S. refused, his parents decided that it would be better if he left India on the basis that the BJP "would kill [him], so it's better that [he] leave that place." Tr. Vol. II p. 16. S.S.'s parents determined that they were no longer able to protect him from the BJP.

[6] After leaving his family's home, S.S. flew to El Salvador and then traveled by land to the Mexico-U.S. border. An unknown member of S.S.'s family had paid for his air fare to El Salvador but had not otherwise provided any support. Once S.S. arrived at the Mexico-United States border, he was taken into custody by the U.S. Department of Homeland Security Office of Refugee Resettlement and placed in a detention center for unaccompanied minors. The Department of Homeland Security contacted Kaur and arranged for S.S.'s travel to her home.

[7] On April 3, 2024, Kaur petitioned the juvenile court to appoint her as S.S.'s legal guardian and requested that it enter specific findings of fact that would allow S.S. to pursue classification as an SIJ. Specifically, Kaur requested that the juvenile court issue findings of fact that it would not be viable to reunify S.S. with either of his parents due to their abandonment and neglect and that it would not be in S.S.'s best interests to return to India.

[8] Neither S.S.'s mother nor father objected to Kaur's petition to become the legal guardian of S.S. Indeed, both parents waived service of summons and notice of

hearing and consented to Kaur having sole legal guardianship over S.S. Both parents also provided a notarized affidavit, in which they detailed how they were unable to provide for S.S.'s essential needs, had ordered S.S. to leave their home, and would refuse to provide for his essential needs or protect him if he were to return to India.

The juvenile court conducted a hearing on May 20, 2024. On June 6, 2024, the juvenile court issued an order granting the guardianship. The juvenile court, however, found that S.S. had neither been abandoned nor neglected by either of his parents. Kaur moved to correct error on July 8, 2024, and the juvenile court denied the motion on August 12, 2024.

## Discussion and Decision

### *Background*

Under federal law, a child may be eligible for lawful permanent residency in the United Sates if the child qualifies for classification as an SIJ. *See* 8 U.S.C. 1101(a)(27)(J); 8 C.F.R. § 204.11 8 U.S.C. 1101(a)(27)(J) (providing definitions that apply to a request for SIJ classification). This benefit was intended to "'protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent citizens.'" *In re Guardianship of Luis, 114 N.E.3d 855, 857 (Ind. Ct. App. 2018)In re Guardianship of Luis*, 114 N.E.3d 855, 857 (Ind. Ct. App. 2018) (quoting *In the Interest of J.J.X.C., a Child*, 734 S.E.2d 120 (Ga. Ct. App. 2012)). Establishing eligibility for SIJ status is "a unique hybrid procedure that directs the collaboration of state and federal systems." *Id.* at 858 (citations and quotation marks omitted).

In order to qualify for SIJ status, the child must first obtain a state juvenile court order that: (1) declares them dependent upon the juvenile court or places them in the legal custody of another; (2) finds that reunification with one or both of their natural parents would not be viable due to abuse, abandonment, neglect, or a similar basis under state law; and (3) determines that it would not be in the child's best interests to be returned to their or their parents' country of nationality or last habitual residence. 8 U.S.C. § 1101(a)(27)(J). In making its findings, "[t]he [juvenile] court is not required to terminate parental rights to determine that parental reunification is not viable." 8 C.F.R. § 204.11(c)(1)(ii). Rather, the juvenile court's purpose is "simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely return in their best interests to their home country." *A.J.L.B. by Lemus v. Alvarenga*, 224 N.E.3d 345, 350 (Ind Ct. App. 2023) (citations omitted).

### Standard of Review

"The standard of appellate review of trial court rulings on motions to correct error is abuse of discretion." *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 772 (Ind. Ct. App. 2009). Similarly,

> [f]indings and orders issued in guardianship proceedings are within the discretion of the trial court. *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014), *trans. denied*; *see also* Ind. Code § 29-3-2-4(a). Accordingly, we review a trial court's findings for an abuse of discretion, which occurs when the decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id*.*Id.* We review any questions of law de novo,

however, affording no deference to the trial court's legal conclusions. *Id. Id.* *Matter of Guardianship of Xitumul*, 137 N.E.3d 945, 951 (Ind. Ct. App. 2019). "We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment." *In re Guardianship of J.K., 862 N.E.2d 686, 691 (Ind. Ct. App. 2007)In re Guardianship of J.K.*, 862 N.E.2d 686, 691 (Ind. Ct. App. 2007).

## I.   Abandonment

[13]   Kaur contends that the juvenile court erred in failing to find that S.S. had been abandoned by his parents due to using an inappropriate legal standard. Specifically, Kaur argues that the juvenile court, instead of defining "abandonment" as "the deprivation of requisite support and the demonstration of an intent to permanently terminate the parent child relationship[,]" Order p. 12, should have adopted the definition of "abandoned" from the Indiana Child Custody Jurisdiction Act:  "left without provision for reasonable and necessary care or supervision."  Ind. Code § 31-21-2-2.

[14]   We need not choose between these two options, however, because the juvenile court's findings regarding possible abandonment fail to satisfy either one.  Kaur focuses on whether one needs to prove that an abandonment is permanent, but the juvenile court found that there was no abandonment at all, permanent or otherwise:  "The Court does not find evidence that [S.S.] was abandoned.  He was living in the home of his parents before he came to the United States.  The parents have not relinquished their role as parents."  Appellant's App. Vol. II p.

13. This finding is supported by the evidence. As the juvenile court noted, there is evidence that S.S.'s parents told him to leave home for his safety but not that they abandoned him. S.S.'s passage to North America was financed by unknown members of his family, and he was taken in by a family member when he arrived in Indiana. We agree that this evidence strongly implies parental support, not abandonment.

Kaur draws our attention to evidence tending to show abandonment, including an affidavit from S.S.'s parents, in which they have averred that they have, in fact, abandoned him. The juvenile court, however, was under no obligation to credit this evidence and did not. *See In re Guardianship of J.K.*, 862 N.E.2d at 691. Kaur's argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do.

## II. Neglect

Kaur also contends that the juvenile court erred in failing to find that S.S.'s parents neglected him, a term that is not defined statutorily in this context.

> [W]hen a statutory term is undefined, the legislature directs us to interpret the term using its "plain, or ordinary and usual, sense." [*Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 605 (Ind. 2019)*Town of Brownsburg v. Fight Against Brownsburg Annexation, 124 N.E.3d 597, 605 (Ind. 2019)*] (quoting I.C. § 1-1-4-1(1)). We generally avoid legal or other specialized dictionaries for such purposes and turn instead to general-language dictionaries.

*Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019)*Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). "Neglect" may be

defined as "to fail to attend to sufficiently or properly [or] not give proper attention or care to[.]" WEBSTER'S 3D NEW INT'L DICTIONARY 1513 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964). Regarding alleged neglect, the juvenile court found that S.S. "did receive food and clothing from his father. While the family would be considered poor, the basic necessities were met. [S.S.] testified that he was attending public school." Appellant's App. Vol. II p. 14. We agree with the juvenile court that occasional deprivation does necessarily prove a failure to give proper attention or care, and that, if anything, the evidence establishes the opposite. As the juvenile court observed in its order on Kaur's motion to correct error,

> What the Petitioner asserts to be neglect, would be evidence of poverty. There is also evidence that the family did provide necessities to the Petitioner, the family paid for education and the international travel was paid by the family. A desire for safety and betterment does not equate to neglect.

Appellant's App. Vol. II p. 12. Kaur (as she did with abandonment) points to evidence, including S.S.'s parents' affidavit, tending to prove neglect. As mentioned, however, the juvenile court was under no obligation to credit any of this testimony and apparently did not. *See In re Guardianship of J.K.*, 862 N.E.2d at 691*In re Guardianship of J.K.*, 862 N.E.2d at 691. Kaur's argument on this point is a request to reweigh the evidence, which we will not do.

[17] We affirm the judgment of the juvenile court.

Bailey, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Thomas R. Ruge
Joseph P. Rompala
Allison L. Upchurch
Lewis & Kappes, P.C.
Indianapolis, Indiana